491 Pa. 50 (1980)
417 A.2d 1138
FRANKLIN COUNTY PRISON BOARD
v.
PENNSYLVANIA LABOR RELATIONS BOARD, Appellant at No. 65
and
Appeal of DISTRICT COUNCIL 89, AMERICAN FEDERATION of STATE, COUNTY and MUNICIPAL EMPLOYEES, AFL-CIO.
Supreme Court of Pennsylvania.
Argued May 20, 1980.
Decided July 3, 1980.
*51 *52 *53 James L. Crawford, Mary Teresa Gavigan, Donald A. Wallace, Harrisburg, for P.L.R.B.
*54 Jay R. Braderman, Harrisburg, for Franklin County Prison Bd.
Jonathan K. Walters, Richard Kirschner, Philadelphia, for American Federation of State, County and Municipal Emp., Council 89.

OPINION OF THE COURT
LARSEN, Justice.
The sole issue in these appeals is the meaning of section 805 of the Public Employe Relations Act, Act 195 of 1970, 43 P.S. §§ 1101.101-1101.2301, § 1101.805 (supp. 1979-80) (Act 195), which provides as follows:
Notwithstanding any other provisions of this act where representatives of units of guards at prisons or mental hospitals or units of employes directly involved with and necessary to the functioning of the courts of this Commonwealth have reached an impasse in collective bargaining and mediation as required in section 801 of this article has not resolved the dispute, the impasse shall be submitted to a panel of arbitrators whose decision shall be final and binding upon both parties with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only. (emphasis added).
Collective bargaining negotiations in 1976 between the representatives of Franklin County Prison guards, District Council 89, American Federation of State, County and Municipal Employees (AFSCME), and their public employer, Franklin County Prison Board[1] (the Prison Board), reached *55 an impasse over several bargaining issues. The impasse was submitted to a collective bargaining arbitration (interest arbitration) panel which issued an arbitration award on March 31, 1976. The award resolved disputed issues regarding wages, job titles, vacation and funeral leave, union visitation on premises, health and welfare benefits and life insurance.
The Prison Board refused to implement any of the provisions of the arbitration award. Consequently, AFSCME,[2] filed unfair labor practice charges with the Pennsylvania Labor Relations Board (PLRB),[3] against the Prison Board, asserting violations of section 1201(a)(1) and (8) of Act 195.[4] The Prison Board presented a strictly legal defense to the unfair labor practices charged, arguing that under section 1620 of the County Code, 16 P.S. § 1620, as amended (supp. 1979-80), only the Franklin County Salary Board (the Salary Board) had authority to fix salaries and compensation of the prison guards and that "the vote of a county salary board is a legislative action." (Answer to Unfair Labor Practice Complaint, R. 7a). Accordingly, the Prison Board asserted *56 this "legislative action" rendered the arbitration award advisory only under the proviso of section 805 of Act 195, and thus asserted its refusal to implement the award was justified.
The PLRB found the refusal of the Prison Board to implement the interest arbitration award a violation of section 1201(a)(1) of Act 195 by "interfering, restraining or coercing" employes in the exercise of their collective bargaining rights, which rights include the submission of unresolved contract disputes to binding arbitration subject to the proviso of section 805.[5] The PLRB further held that the section 805 proviso did not authorize an employer to simply refuse to implement an award merely because a county salary board had authority to "fix" salaries and compensation of county employes. In its Final Order of June 16, 1977, the PLRB reasoned that, since the Prison Board offered no evidence whatever to indicate that the local legislative body refused to implement the award, or even that the award was submitted to such body, the legal position of the Prison Board "would be a reversion to the unilateral decision making process which prevailed prior to enactment of [Act 195] . . .." The Final Order made absolute the Nisi Order directing the Prison Board to:
1. Cease and desist from in any manner, interfering, restraining or coercing its employes in the exercise of their rights guaranteed in Article IV of the Public Employe Relations Act.
2. Take the following affirmative action which the Board finds will effectuate the policies of the Public Employe Relations Act:
(a) Implement the award of the Board of Arbitration dated March 31, 1976
.....
(c) Furnish satisfactory evidence to the Pennsylvania Labor Relations Board by Affidavit or Affidavits of Compliance *57 with this Decision and Order within twenty (20) days from the effective date hereof. . . .
Appellee filed a Petition for Review in the Court of Common Pleas of Franklin County. On April 25, 1978, that court dismissed the petition and affirmed the PLRB Final Order in its entirety. Franklin County Prison Board v. Pennsylvania Labor Relations Board, 9 PPER 9108 (1978).
The Prison Board then appealed to the Commonwealth Court. On August 31, 1979, that court reversed the lower court. These appeals of AFSCME and the PLRB followed; we reverse and reinstate the order of the Court of Common Pleas of Franklin County.
Initially, we must reject the Prison Board's assertion of section 1620 of the County Code as a defense to an unfair labor practice based on a refusal to implement those items of the arbitration award which did not deal with salaries or compensation. (These items are job title, vacation and funeral leave and union visitation). Section 1620 provides, in relevant part: "The salaries and compensation of county officers shall be as now or hereafter fixed by law. The salaries and compensation of all appointed officers and employes who are paid from the county treasury shall be fixed by the salary board created by this act for such purposes. . .." The Salary Board has no control over non-financial items  instead, management of the prison guards with respect to these items is vested exclusively with the county prison boards. See Act of May 16, 1921, P.L. 579, as amended, 61 P.S. §§ 408 and 409 (supp. 1979-80) delineating the respective spheres of authority of the prison board and the salary board with respect to guards at county jails or prisons. Thus, the argument that the "vote of a county salary board is a legislative action" within the meaning of section 805 of Act 195 is of no moment as to those items over which the salary board has no control, and it was erroneous for the Prison Board and the Commonwealth Court to ignore the distinction between these items and those involving salaries and compensation.
*58 The provisions of the arbitration award dealing with salaries and compensation are not as easily decided. The issue becomes "Is the authority of county salary boards to `fix salaries and compensation' equivalent to a `require[d] legislative enactment,' such that any section 805 arbitration award involving or affecting salaries and compensation is automatically deemed advisory?" We think not.
Section 101 of Act 195 declares the expressed public policy of the General Assembly:
it is the public policy of this Commonwealth and the purpose of this act to promote orderly and constructive relationships between all public employers and their employes subject, however, to the paramount right of the citizens of this Commonwealth to keep inviolate the guarantees for their health, safety and welfare. Unresolved disputes between the public employer and its employes are injurious to the public and the General Assembly is therefore aware that adequate means must be established for minimizing them and providing for their resolution. Within the limitations imposed upon the governmental processes by these rights of the public at large and recognizing that harmonious relationships are required between the public employer and its employes, the General Assembly has determined that the overall policy may best be accomplished by (1) granting to public employes the right to organize and choose freely their representatives; (2) requiring public employers to negotiate and bargain with employe organizations representing public employes and to enter into written agreements evidencing the result of such bargaining; and (3) establishing procedures to provide for the protection of the rights of the public employe, the public employer and the public at large.
One of the procedures providing for the protection of the public at large, the public employer and public employe is arbitration, both interest arbitration and grievance arbitration. See 43 P.S. §§ 1101.804, 805 and 903. The importance of the arbitration machinery was recently stressed by this Court in Pittsburgh Joint Collective Bargaining Committee *59 v. City of Pittsburgh, 481 Pa. 62, 69, 391 A.2d 1318, 1321 (1978) wherein we stated
`Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory . . .'
[T]he final step [of the grievance procedure] shall provide for a binding decision by an arbitrator . . .' This policy is even stronger than that embodied in federal labor policy . . . Federal policy merely favors the submission of disputes to arbitration, while [Act 195] requires it. (citations omitted) (emphasis added)
Although that case arose in the context of a section 903 grievance arbitration, the rationale and policy considerations are equally salient in the section 805 interest arbitration context.
The importance of arbitration is even more important to prison guards than to most public employees. The right to strike (in harmony with Article X) which is granted to most public employes is withheld from prison guards, as well as guards of mental hospitals and employes necessary to the functioning of the courts. Due to the essential nature of these services, the legislature has provided an alternative procedure to striking, namely, final and binding arbitration of impasses.
A constitutional limitation exists, however, on the General Assembly's power to make arbitration awards final and binding. Art. III, section 31 of the Pennsylvania Constitution provides
The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever.
Where an arbitration award would infringe on the legislative power of the General Assembly or of the lawmaking body of a political subdivision of the Commonwealth, as *60 where the appropriation of funds and/or the levying of taxes is required by the award, then that award is invalid under Art. III, section 31 as an attempted delegation of legislative power to a non-legislative body. See City of Washington v. Police Department, 436 Pa. 168, 175 n. 6, 259 A.2d 437, 440 n. 6 (1969) and Erie Firefighters Local No. 293 v. Gardner, 406 Pa. 395, 178 A.2d 691 (1962).[6] A contrary result would offend the basic constitutional prohibition against taxation without representation and the mandated separation of powers which is embodied in Art. III, sec. 31.
Recognizing the limitations imposed by Art. III, section 31, section 805 of Act 195 provides decisions of arbitrators considering collective bargaining impasses between affected employes and their employers "shall be final and binding upon both parties with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only." In light of the expressed purposes of Act 195 and the reliance on arbitration as an alternative to striking (especially for those employes prohibited from striking), we cannot accept the Prison Board's interpretation of section 805 that the mere existence of authority in the Salary Board to "fix salaries *61 and compensation" renders all arbitration awards touching upon such items advisory only. Such an interpretation would nullify, for all practical purposes, the "final and binding" provisions of section 805 for all awards regarding salaries or other compensation. Such an interpretation would be contrary to the clearly expressed intentions of the General Assembly, as well as the principles of statutory construction. See the Statutory Construction Act of 1972, 1 Pa.C.S.A. §§ 1922(2) and 1921(a) (supp. pamphlet).
It is true, as the Prison Board maintains, that appropriation of funds and levying of taxes by a legislative body of a political subdivision constitute legislative enactments within the meaning of section 805. See City of Washington v. Police Department, supra and Act 111, supra note 6 (which specifically refers to the lawmaking body of a political subdivision). Their syllogism fails, however, when the Prison Board equates the fixing of salaries and compensation by the Salary Board with appropriation of funds and levying of taxes by a lawmaking body. The authority to appropriate funds and levy taxes has been vested in the county commissioners, the County Code 16 P.S. §§ 202(6) and 203, not in the Salary Board. Moreover, a member of the executive branch of local government  either the county controller or the county treasurer where there is no controller  sits on the salary boards, 16 P.S. § 1622, further discrediting the notion that the salary boards are legislative bodies. The salary boards perform administrative functions only in "fixing" salaries and compensation.
Given the foregoing and the resolve to effectuate the purposes of Act 195 as fully as possible, we hold that the requirement that the Salary Board must "fix" salaries and compensation of the prison guards does not require a "legislative enactment," and that, therefore, the arbitration award is not advisory only. Indeed, the Salary Board must fix the salaries and compensation in accordance with the terms of the award. Accordingly, the unilateral rejection of the arbitration award by the Prison Board was, as the PLRB found, a section 1201(a)(1) unfair labor practice, and their *62 directions to the Prison Board to implement the award was proper under section 1301.[7]
However, the Prison Board can only implement the award to the extent permitted by Art. III, sec. 31 of the Constitution. Thus, the Prison Board can only submit to the Salary Board the financial items of the arbitration award, and the Salary Board must fix the salary and compensation in accordance with the award. If, at that point, legislative enactment is required  that is, if taxes must be levied or funds appropriated  then our holding herein cannot be read to override the Constitutional prohibition against improper delegation of legislative powers. Where it is demonstrated by the public employer that the lawmaking body has met, considered and rejected an arbitration award concerning financial items, then Art. III, sec. 31 and the proviso of section 805 become operative, and the award is thereby rendered advisory only. In such an event, the only recourse at present available to the public employes is either a constitutional amendment or resort to the political processes.
For the reasons stated above, the order of the Commonwealth Court is reversed and the order of the Court of Common Pleas of Franklin County affirming the Final Order of the Pennsylvania Labor Relations Board is reinstated.
NIX, J., filed a concurring opinion.
ROBERTS, J., concurred in the result.
NIX, Justice, concurring.
It is my understanding that today's Opinion of the Court requires the Prison Board and the Salary Board to implement the arbitration award as far as it is within the power of these two bodies to do so. I agree that since neither of these two Boards are empowered with the legislative authority to appropriate funds or levy taxes, they are not within the proviso of section 805 of the Public Employe Relations *63 Act, Act of June 23, 1970, No. 195, P.L. 563, 43 P.S. § 1101.805. However, since the County Commissioners are granted such authority, the Commissioners are within the meaning of the proviso. Accordingly, as to the County Commissioners, the arbitration award was merely advisory. I, therefore, agree that this proviso did not release the Prison Board from its statutory duty to implement the arbitration award. The Prison Board's attempt to raise section 805 is premature. It would only come to play if and when the County Commissioners refuse to make the required appropriation.
NOTES
[1] The parties have stipulated that the Prison Board is the public employer for collective bargaining purposes in this proceeding. The arbitration award herein was issued prior to the June 29, 1976 amendment to section 1620 of the County Code, 16 P.S. § 1620 (supp. 1979-80) which provides, so far as is pertinent, as follows:

with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employes paid from the county treasury, the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas, the county and all elected or appointed county officers having any employment powers over the affected employes. The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers.
The parties do not maintain that this amendment should be applied to the instant proceedings, and, as there is no challenge to the certification of the Prison Board as the public employer, we do not address the issue. Cf. Ellenbogen v. County of Allegheny, 479 Pa. 429, 388 A.2d 730 (1978).
[2] AFSCME is the appellant at No. 65 May Term, 1979.
[3] The PLRB is the appellant at No. 66 May Term, 1979.
[4] Section 1201(a)(1) and (8) provides:

Section 1201. (a) Public employers, their agents or representatives are prohibited from:
(1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.
.....
(8) Refusing to comply with the provisions of an arbitration award deemed binding under section 903 of Article IX."
[5] The PLRB found no violation of section 1201(a)(8). This decision was not appealed.
[6] The 1968 Constitutional amendment to Art. III, section 31 specifically permits the delegation to panels or commissions of the authority to bind lawmaking bodies to arbitration resolutions of grievances, disputes or collective bargaining impasses between firemen and policemen and their public employers. This amendment provides:

Notwithstanding the foregoing limitation or any other provision of the Constitution, the General Assembly may enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties and shall constitute a mandate to the head of the political subdivision which is the employer, or to the appropriate officer of the Commonwealth if the Commonwealth is the employer, with respect to matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision or of the Commonwealth, with respect to matters which require legislative action, to take the action necessary to carry out such findings.
Act 111 of 1974, § 7, 43 P.S. § 217.7 (supp. 1978-79), granting collective bargaining rights to policemen and firemen, implemented the 1968 constitutional amendment.
[7] Section 1301, 43 P.S. § 1101.1301 empowers the PLRB to "prevent any person from engaging in any unfair practice listed in Article XII of this act."