**County of Allegheny v. Allegheny Court Asso. of Professional Employees**

*James H. McLean, County Solicitor,* and *Thomas H. Hough, Assistant County Solicitor,* for petitioner.

*Louis B. Kishner,* for respondent.

STRANAHAN, *J., Specially Presiding,* March 19, 1981—The parties involved in this matter are the Allegheny Court Assoc. Professional Employees, ACAPE representing all court appointed employes of Allegheny County[1] covered by the certification issued by the Pennsylvania Labor Relations Board[2] and the County of Allegheny, a public employer under the Public Employe Relations Act of July 23, 1970, P.L. 563, 43 P.S. § 1101.101 et. seq. hereinafter referred to as PERA.

There has been protracted litigation and negotiations in this matter much of which arose over the question of whether the Judiciary or the County Commissioners was the employer of court appointed personnel.

Ellenbogen v. County of Allegheny et al, 479 Pa. 429, 388 A. 2d 730 (1978) held that the County Commissioners were the "managerial representatives" of the judiciary for the purpose of collective bargaining with court employes.

After the parties had reached a bargaining impasse, pursuant to section 805 of Act 195, 43 P.S. § 1101.805 the matter was submitted to arbitration.

On May 29, 1980, the panel of arbitrators delivered an award proposed as the collective bargain-

1. These employes include the Domestic Relations Counselors, Juvenile Court Probation Officers, Adult Probation Officers, Orphans' Court Investigators, Behavior Clinic Social Workers and County Law Librarians.

2. The certification is at no. PERA R-2311-W.

ing agreement between the Allegheny County Commissioners and ACAPE. The award contained both fiscal and non-fiscal matters.

The county has refused to implement any of the provisions of the award and has filed this petition for review claiming that the award is unconstitutional, advisory only and a violation of existing laws.

It has long been the position of the judiciary in Pennsylvania that its power is a separate power from that of the executive and legislative branches and any effort to curtail that power was an effort to curtail the court system itself. Such cases as Com. ex rel. Carroll v. Tate, 442 Pa. 45, 274 A. 2d 193 (1971) and Leahey v. Farrell, 362 Pa. 52, 66 A. 2d 577 (1949) have served as bedrock authority for the proposition that courts have inherent authority to compel payment of funds reasonably necessary to administer the judicial branch. From this came the undisputed axiom that no other branch of government had any right to dictate to the judiciary as to matters financial or non-financial.

But erosion of this principle has begun. When it started is difficult to determine but Act 195 of July 23, 1970, P.L. 563, 43 P.S. §1101.101 et seq. is a key factor in the change that has come about. This act gives public employes the right to organize, the right to negotiate and bargain, and the right to establish procedures for their protection.

While special problems arose with certain personnel involved in government such as guards at prisons and employes necessary to the functioning of the courts the policy of the legislature was quite clear the day of collective bargaining had arrived at the county courthouse.[3]

---

3. 43 P.S. §1101.805

Questions that were initially raised have now been answered. Was Act 195 itself unconstitutional as it applied to the courts because it infringed on the judiciary? If it was constitutional, then who would bargain with court employes?

As to the first question dealing with the constitutionality of Act 195, the Supreme Court upheld Act 195 as being constitutional when it involved the judiciary in Edward J. Bradley v. Pennsylvania Labor Relations Board, 479 Pa. 440, 388 A. 2d 736 (1978); Ellenbogen v. County of Allegheny et al, 479 Pa. 429, 388 A. 2d 730 (1978); Sweet et al v. Pennsylvania Labor Board et al., 479 Pa. 449, 388 A. 2d 740 (1978); Court of Common Pleas of Bucks County v. Pennsylvania Labor Relations Board et al., 479 Pa. 457, 388 A. 2d 744 (1978).[4]

In answering the second question, the Supreme Court noted and expanded section 1620 of the County Code, 16 P.S. §1620 to include all counties in the Commonwealth. This section provides that the County Commissioners "shall have the sole power and responsibility to *represent judges of the Court of Common Pleas.*" Ellenbogen v. County of Allegheny supra, at 435. (Emphasis supplied.) This ruling is quite logical, for it keeps the judiciary on the bench rather than at the bargaining table and it permits the County Commissioners to control the fiscal policies of the judicial district.

With these problems answered, the remaining issues have now narrowed to two questions. Can the County Commissioners bargain such matters of a non-fiscal nature that involve hiring, supervis-

---

4. The Pennsylvania Labor Relations Board has consistently held that "collective bargaining rights exercised by employes working on and for the court system do not interfere with the independence of the judiciary." In re Cambria County, 10 PPER 10219.

ing, discharging, etc., of court personnel and, if an impasse is reached so that arbitration is employed, is the award advisory only or is it binding on the parties?[5]

## I. Can The County Commissioners Bargain Non-Fiscal Matters Involving Court Personnel?

The position of the courts is that the Commissioners may be the "managerial representatives" of the judiciary in all fiscal matters, but this does not give the Commissioners the authority to bargain the rights of the judiciary to hire, discharge and supervise its employes. The reason for this rests with the extension of section 1620 of the County Code to Allegheny County under the Ellenbogen case.[6]

While we have some difficulty with this case, we believe it tells us that the Commissioners not only have the sole power to represent the judges of the Court of Common Pleas at the bargaining table, but they also have the authority to set the terms of the

5. The Ellenbogen case has laid to rest any question of the Commissioners' right to bargain for the judiciary on fiscal matters. pg. 436.

6. Section 1620 contains the following language: "Provided, however, That with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employes paid from the county treasury, the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas, the county and all elected or appointed county officers having any employment powers over the affected employes. The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers."

bargain without consulting the judiciary.[7] The only limit on this power is that the Commissioners cannot bargain away, nor can an arbitration award include any provision that affects the right of the judiciary to hire, discharge and supervise its employes. At page 436 of Ellenbogen, the court states:

"The amendment governing representation of managerial interests promotes several important public interests, including fiscal responsibility. County Commissioners are charged with the responsibility of raising revenue and allocating funds among various county services. . .Thus, the amendment allows county commissioners to make managerial decisions affecting tax dollars. This reflects the legislative judgment that the officials

---

7. Our difficulty with the Ellenbogen case as far as its interpretation of section 1620 is concerned stems from the fact that the phrase ". . .the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas . . ." has been expanded beyond its meaning. From this language, the appellate court concludes that the Commissioners have the power to represent *themselves,* not the judges, at the bargaining table in all matters pertaining to the judiciary except hiring, discharging and supervising of court personnel.

Obviously, in most situations the position of the commissioners and the judges is identical during bargaining sessions and, therefore, the handling of such matters by the commissioners creates no problem for the judiciary.

But, what if the judiciary and the commissioners are at odds over matters that do not pertain to hiring, discharging or supervising personnel? Since the commissioners represent the judges, should not the judges be able to establish reasonable guidelines that the commissioners must follow at the bargaining table?

It is true that the commissioners are responsible for the overall administration of county fiscal and governmental affairs, but it is equally true that the knowledge many commissioners have as to how the courts operate is, at best, suspect.

charged with providing revenue for budgets are best able to assess whether employe proposals at the bargaining table are feasible and consistent with the overall administration of county fiscal and governmental affairs."

In summary, we believe that the Commissioners are the managerial representatives to represent the judges in dealing with court employes in all matters except the hiring, discharging or supervising of court personnel. By managerial representative we mean that the Commissioners not only sit at the bargaining table to represent the judges but they can make the terms of the bargain without consulting the judges.

If, however, the bargaining agreement includes any terms that affect the hiring, discharging or supervising of judicial employes, these terms are void because there is no authority to include such terms and because these matters are vested solely in the judiciary.

It follows that any arbitration award that includes matters vested in the judiciary must be corrected to eliminate such matters.

II. Is An Arbitration Award Involving Fiscal Matters Binding On The County, Or Is It Merely Advisory?

We believe the appellate court has already answered this problem.

Pa. Const., Art. III, §31 provides:

The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function

whatever. Notwithstanding the foregoing limitation or any other provision of the Constitution, the General Assembly may enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties and shall constitute a mandate to the head of the political subdivision which is the employer, or to the appropriate officer of the Commonwealth, if the Commonwealth is the employer, with respect to matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision or of the Commonwealth, with respect to matters which require legislative action, to take the action necessary to carry out such findings.

Consistent with this provision, is section 805 of Act 195, 43 P.S. §1101.805, which provides:

Notwithstanding any other provisions of this act where representatives of units of. . .employes directly involved with and necessary to the functioning of the courts of this Commonwealth have reached an impasse in collective bargaining and mediation as required in section 801 of this article has not resolved the dispute, *the impasse shall be submitted to a panel of arbitrators whose decision shall be final and binding upon both parties with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only.* (Emphasis supplied.)[8]

---

8. Section 805 of the Public Employe Relations Act of July 23, 1970, P.L. 563, as amended, 43 P.S. §1101.101 et seq.

The question is whether the arbitration award is advisory only. To determine this is a question of fact. Is it necessary for the Commissioners to use their power of legislative enactment to implement the award?

On October 9, 1980, the Commissioners of Allegheny County passed a resolution determining that the award would require legislative enactment and, therefore, it was advisory only.[9]

This type of action is unsatisfactory since it would give the Commissioners an "automatic out" of every award. The burden must be on the Commissioners to show that legislative enactment would be required to effect the award.[10]

The appropriate method of determination would be for this court to conduct a hearing at which time it would determine if the Commissioners would require legislative enactment to implement the award. In this matter, the question of whether the award is advisory or binding would be decided.

---

9. "BEFORE THE BOARD OF COUNTY COMMISSIONERS OF ALLEGHENY COUNTY, PENNSYLVANIA. RESOLVED that upon review of the Arbitration Award of May 29, 1980 for Allegheny Court Associated Professional Employee's (ACAPE), it is determined that such an award would require legislative enactment to be effective and shall be considered advisory only. Therefore, said Arbitration Award being the same is hereby rejected. Certified by: Scott R. O'Donnell, Chief Clerk, Date: October 9, 1980."

10. Franklin County Prison Board v. Pennsylvania Labor Relations Board, 491 Pa. 50, 417 A. 2d 1138 (1980) at pg. 62, the court states: "Where it is *demonstrated* by the public employer that the lawmaking body has met, considered and rejected an arbitration award concerning financial items, then Art. III, sec. 31, and the proviso of section 805 become operative. . . ." (Emphasis in original.)

## CONCLUSIONS

Considering the conclusions set forth in this opinion, we have reviewed the award of the arbitration panel and believe that the award is binding on Allegheny County subject to the following exceptions and determinations:

1. Those provisions that come within the vested right of the courts to hire, discharge and supervise court personnel. While it is sometimes difficult to clearly delineate which provisions of the award belong in this category, we believe the following sections endeavor to usurp the court's vested interest: A. Article VI, Vacations, paragraph 4 only. B. Article IX, Seniority. C. Article XII, Suspension and Discharge. D. Article XXIV, Scheduling, Overtime, Rest Periods, and all paragraphs except paragraph 4.

2. The fiscal matters contained in the award are subject to a determination of whether legislative enactment would be required to implement these provisions. If it does not, then they are binding, otherwise, they are advisory only.

## ORDER

And now, March 19, 1981, it is ordered by this court as follows:

1. A hearing shall be held at which time the County of Allegheny shall bear the burden of proving that the fiscal matters set forth in the arbitration award require legislative enactment to implement. This court reserves the right to make a further order upon determination of that issue.

2. The following sections of the arbitration award are void because they are vested rights of the judiciary and, therefore, not subject to arbitration: A. Article VI, Vacations — paragraph 4 only.

B.  Article IX, Seniority C.  Article XII, Suspension and Discharge D.  Article XXIV, Scheduling, Overtime, Rest Periods — all paragraphs except paragraph 4.