496 Pa. 315 (1981)
436 A.2d 1386
ASSOCIATION OF PENNSYLVANIA STATE COLLEGE AND UNIVERSITY FACULTIES, Appellee,
v.
COMMONWEALTH of Pennsylvania and Caryl M. Kline, Secretary of Education of the Commonwealth of Pennsylvania, Appellants.
Supreme Court of Pennsylvania.
Argued September 18, 1981.
Decided November 9, 1981.
*316 David H. Allshouse, Deputy Atty. Gen., Allen C. Warshaw, Deputy Atty. Gen., LeRoy S. Zimmerman, Atty. Gen., Harrisburg, for appellants.
Jerome H. Gerber, Elliott A. Strokoff, Harrisburg, for appellee.
Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, and KAUFFMAN, JJ.

*317 OPINION OF THE COURT
FLAHERTY, Justice.
This is an appeal from an order of the Commonwealth Court[1] which confirmed an arbitration award issued in connection with a salary dispute between the Commonwealth and the Association of Pennsylvania State College and University Faculties (hereinafter APSCUF). APSCUF, the certified collective bargaining representative for faculty members of the Pennsylvania State Colleges and Indiana University, and the Commonwealth are parties to a collective bargaining agreement containing a wage reopener clause that permits the negotiation of annual salary increases for faculty members. The agreement provides that, in the event negotiations fail to produce an agreement concerning the annual salary increase, the matter of the increase is to be submitted to binding arbitration. For the academic year commencing September 1, 1977, APSCUF and the Commonwealth were unable, through negotiations, to agree on the amount of the increase payable. Hence, on March 24, 1978, an arbitration panel was convened, and the employees represented by APSCUF were awarded a 4.5% salary increase retroactive to September 1, 1977.
No appeal was taken from the arbitration award, but the Commonwealth has refused to pay increases applicable to the period from September 1, 1977 through June 30, 1978. Asserted as the basis for this refusal is the following provision in the Appropriations Act of 1977 (hereinafter Act 11A):
"The funds appropriated herein for the operation, maintenance, and administration of the State Colleges and University are not sufficient to provide for any negotiated compensation increases after the effective date of this act, therefore no funds appropriated herein shall be used for such negotiated compensation increases.

* * * * * *

*318 No funds received from any other source by the State Colleges and University shall be used for negotiated compensation increases . . ." (Emphasis added.)
Act of August 20, 1977, No. 11A, P.L. 420.[2] By disallowing the application of funds to the payment of negotiated salary increases, the legislature has, in the Commonwealth's view, also proscribed the use of funds for the payment of increases imposed by binding arbitration. Such a position is unconvincing however for it ignores the plain language of the statute. In effect, if arbitrated pay raises were regarded as being within the purview of the statutory proscription, then the provision in question would constitute a ban on all compensation increases. If the legislature had intended so comprehensive an interdiction, it would not have employed the limiting term, "negotiated", to define the compensation increases to which the statutory restriction applied.
Negotiation and arbitration are two entirely distinct and dissimilar processes for the resolution of disputes, and to no extent is the concept of arbitration encompassed by the term "negotiation" so as to bring arbitrated salary raises within the ambit of the funding restrictions imposed by Act 11A. Furthermore, we reject the Commonwealth's assertions that arbitration constitutes merely the final step in the negotiation process and that, when a collective bargaining agreement provides for resort to an arbitration procedure, the latter becomes a negotiated process. When an impasse is reached in negotiation, so that attempts to secure a *319 mutual agreement have failed, submission of the matter to arbitration demarcates the end of negotiation. Arbitration invokes an entirely distinguishable approach to the resolution of a dispute, by calling upon a third party to impose a solution to that which was not susceptible to mutual concordance.
The funding restriction embodied in Act 11A reflects legislative cognizance of a fundamental difference between public and private sector salary negotiations. Public sector employers, unlike those in the private realm, may lack motivation to bargain vigorously towards the achievement of wage-cost minimization. The public employer, whose continued existence does not depend on cost-efficient management decisions, may yield to compensation demands in excess of those to which a private employer would accede. Indeed, the former's awareness that public sector budget increases can be requested to cover negotiated salary raises may, in itself, diminish the adversarial nature of the bargaining process. Hence, the legislature, by precluding the use of funds for payment of negotiated compensation increases, sought to avert unrestrained salary raises at the hands of parties having little to lose in the negotiation process. The intervention of an arbitrator, however, as an objective third party, was envisioned by the legislature as an effective restraint upon excessive compensation increases; thus, arbitrated raises were not excluded from the funding of Act 11A.[3]
The Commonwealth also seeks to justify its refusal to pay the arbitration award by reference to the following provision in Section 804 of the Public Employees Relations Act (hereinafter Act 195), which allegedly renders the award merely advisory, rather than binding, as to the employer:

*320 "Nothing in this article shall prevent the parties from submitting impasses to voluntary binding arbitration with the proviso the decisions of the arbitrator which would require legislative enactment to be effective shall be considered advisory only." (Emphasis added.)
Act of July 23, 1970, P.L. 563, No. 195, art. VIII, § 804, as amended, 43 P.S. § 1101.804 (Supp. 1981). The Commonwealth's interpretation of Section 804 is erroneous, however, for the provision was not intended to render arbitration awards advisory as to all parties and for all purposes. Rather, Section 804 was enacted simply to memorialize the fact that an arbitration award cannot bind the legislature, since that body is constitutionally required to retain unto itself ultimate discretion over the appropriation of funds needed to effectuate payment of the compensation increases in question. Pa.Const. art. III, §§ 24, 31; Franklin County Prison Board v. Pennsylvania Labor Relations Board, 491 Pa. 50, 417 A.2d 1138 (1980). Despite the advisory nature of arbitration as to the legislature, however, the effect of arbitration upon the parties is manifestly different. Section 804 of Act 195 authorizes a public employer to enter "binding" arbitration; it is spurious to suggest that the result of that process is then not binding upon the parties.
In Franklin County Prison Board, supra, this Court construed language contained in a separate, yet similar, provision of Act 195. Therein, we stated:
Recognizing the limitations imposed by Art. III, section 31, section 805 of Act 195 provides decisions of arbitrators considering collective bargaining impasses between affected employees and their employers "shall be final and binding upon both parties with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only." In light of the expressed purposes of Act 195 and the reliance on arbitration as an alternative to striking. . ., we cannot accept the Prison Board's interpretation of section 805 that the mere existence of authority in the Salary Board to "fix salaries and compensation" renders *321 all arbitration awards touching upon such items advisory only. Such an interpretation would nullify, for all practical purposes, the "final and binding" provisions of section 805 for all awards regarding salaries or other compensation. Such an interpretation would be contrary to the clearly expressed intentions of the General Assembly, as well as the principles of statutory construction.
Franklin County Prison Board, 491 Pa. at 60, 61, 417 A.2d at 1143. Indeed, the legislative intent underlying Act 195 weighs against regarding an employer as having the power, under Section 804, to unilaterally reject the terms of an arbitration award. Via Act 195, the legislature elevated arbitration to a pivotal role in the resolution of disputes within public sector employment. Protection of the public at large, the public employer, and the public employee, were the goals of Act 195. Franklin County Prison Board, 491 Pa. at 58, 417 A.2d at 1142. We decline, therefore, to adopt an interpretation of Section 804 that would nullify the effectiveness of the arbitration process so clearly intended to be binding, rather than merely advisory, with respect to the parties involved.
Order of Commonwealth Court affirmed.
ROBERTS, J., filed a dissenting opinion in which NIX, J., joins.
WILKINSON, J., did not participate in the consideration or decision of this case.
ROBERTS, Justice, dissenting.
The majority has disregarded the critical fact that, in April of 1981, after the Commonwealth Court confirmed the present arbitration award, the Pennsylvania Senate considered and rejected an appropriation measure which, if approved, would have funded the award. Legislative Journal (Senate) at 486 (4/27/81). This legislative refusal to fund the award requires the vacation of the order of the *322 Commonwealth Court and the dismissal of the motion for confirmation. The majority improperly substitutes its view for the Legislature's considered determination.
The decision whether to appropriate funds for the arbitration award is exclusively a legislative function, and outside the authority of our courts. Under our Constitution, "[n]o money shall be paid out of the treasury, except on appropriations made by law and on warrant issued by the proper officers . . . ." Pa.Const. art. III, § 24. As our case law has recognized, "[t]he legislature in appropriating is supreme within the limits of the revenue and moneys at its disposal." Commonwealth v. Liveright, 308 Pa. 35, 67, 161 A. 697, 707 (1932).
Section 804 of the Public Employees Relations Act (Act 195) provides:
"Nothing in this article shall prevent the parties from submitting impasses to voluntary binding arbitration with the proviso the decisions of the arbitrator which would require legislative enactment to be effective shall be considered advisory only."
Act of July 23, 1970, P.L. 563, 43 P.S. § 1101.804 (Supp. 1981) (emphasis added). The parties have specifically incorporated the mandate of section 804 into their collective bargaining agreement:
"In the event that any provision of this Agreement requires legislative action to become effective, including, but not limited to, amendment of existing statutes, the adoption of new legislation or the granting of appropriations, that provision shall become effective only if such legislative action is taken. * * *"
Article XXXIV, Clause A.
Here the Legislature, acting well within the scope of its constitutional authority, has refused to fund the advisory award. Under both Act 195 and the parties' agreement, this legislative action forecloses enforcement of the award.
*323 The Legislature's specific refusal to fund the arbitration award makes it unnecessary to consider the meaning of Appropriation Act 11A of 1977. However, it must be pointed out that the majority's interpretation of the act is incorrect. The act provides:
"The funds appropriated herein for the operation, maintenance, and administration of the State Colleges and University are not sufficient to provide for any negotiated compensation increases after the effective date of this act, therefore no funds appropriated herein shall be used for such negotiated compensation increases."
Obviously the Appropriation Act was designed to limit expenditures to those provided for in the legislative budget. Just as obviously, "negotiated compensation increases" include not only increases negotiated directly by the parties but also increases negotiated through the medium of an arbitrator. Because arbitration is merely a step in the process of "negotiation," the legislative purpose underlying the Appropriation Act would be defeated if appropriated funds were used to pay compensation increases achieved by award. Clearly, all "negotiated compensation increases," whether awarded or bargained for, pose the same threat to the integrity of the legislative budget. Both types of increases, therefore, are prohibited by the act.
It is equally clear that, contrary to the majority's view, the Commonwealth Court has no jurisdiction to confirm an arbitration award which has not received the required legislative funding. As is recognized by the parties' collective bargaining agreement, an arbitrator's award remains wholly advisory until the Legislature has given the award its statutorily required approval. Here, for more than three years, the Legislature has refused to approve the advisory award. Without legislative approval, judicial confirmation is premature and inappropriate.
The majority's unwarranted usurpation of the Legislature's exclusive control over appropriations compels dissent.
NOTES
[1] Association of Pennsylvania State College and University Faculties v. Kline, 58 Pa.Cmwlth. 164, 427 A.2d 684 (1981).
[2] Subsequent to the determination below by the Commonwealth Court and therefore obviously not before us, in April, 1981, a bill to specifically fund the payment of the award in question was introduced, but rejected, in the Pennsylvania Senate. Legislative Journal  Senate, p. 486 (April 27, 1981). The Senate's refusal, in 1981, to approve or disapprove funding of the arbitrated pay increase is an event not relevant or appropriate to our present review.

Notwithstanding this event, the first consideration of a bill by the Senate is hardly definitive action by the General Assembly, and further notwithstanding, it occurred subsequent to the legislation under review and the disposition of the case below by the Commonwealth Court and hence is irrelevant under any theory. See e.g. Commonwealth v. Young, 456 Pa. 102, 115, 317 A.2d 258, 264 (1974); McCaffrey v. Pittsburgh Athletic Association, 448 Pa. 151, 162, 293 A.2d 51, 57 (1972).
[3] The collective bargaining agreement provides that, in the event negotiations fail to culminate in an agreement regarding the annual compensation increase, the maximum level of raise awardable by the arbitration panel cannot exceed that evident in the pattern of wage and salary settlements granted to Commonwealth employees represented by other collective bargaining agents.