539 A.2d 348

**COUNTY OF ALLEGHENY, Appellant,**

v.

**ALLEGHENY COURT ASSOCIATION OF PROFESSIONAL EMPLOYEES, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 25, 1987.

Decided March 22, 1988.

506

James J. Dodaro, County Sol., Thomas H.M. Hough, Asst. County Sol., Pittsburgh, for appellant.

Daniel R. Delaney, Pittsburgh, for appellee.

Alaine S. Williams, Kirschner, Walters & Willig, Philadelphia, for amicus curiae, Council 13, AFL-CIO.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

Section 805 of the Public Employe Relations Act, or Act 195, provides as follows:

Notwithstanding any other provisions of this act where representatives of units of guards at prisons or mental hospitals or units of employes directly involved with and necessary to the functioning of the courts of this Commonwealth have reached an impasse in collective bargaining and mediation as required in section 801 of this article has not resolved the dispute, the impasse shall be submitted to a panel of arbitrators *whose decision shall be*

*final and binding upon both parties with the proviso that the decisions of the arbitrators which would require legislative enactment to be effective shall be considered advisory only.*

Act of July 23, 1970, P.L. 563, No. 195, art. VIII, § 805, 43 P.S. § 1101.805 (Supp.1987) (emphasis added).

In this case, we are called upon to delineate the meaning of "legislative enactment" so as to differentiate those arbitration awards that are binding upon public employers and employees under section 805 from those that are advisory only. Specifically, we must determine whether an arbitration award increasing the salaries and awarding a one-time bonus to the court employees represented by appellee herein required "legislative enactment to be effective...."

The Commissioners of the County of Allegheny, the appellant, engaged in collective bargaining negotiations in 1979 with appellee, the Allegheny Court Association of Professional Employees (ACAPE), which represented the professional employees of the Court of Common Pleas of Allegheny County. The parties reached an impasse in their negotiations and, pursuant to section 805 of Act 195, the matter was referred to an arbitration panel. On May 29, 1980, the arbitration panel rendered its decision which set forth a collective bargaining agreement effective May 1, 1980 through June 30, 1981 which, inter alia, increased the salary scale for the term of the agreement for all employees in the bargaining unit, and awarded a one-time cash bonus of $1,200.00 to each employee in the unit.

In June, 1980, the County filed a Petition for Review of an Arbitration Award and Order in the Court of Common Pleas of Allegheny County. The Honorable John Q. Stranahan of the Court of Common Pleas of Mercer County was appointed by our Court Administrator to preside over this petition for review, and a conference was scheduled for October 10, 1980. On October 9, 1980, the Board of County Commissioners, upon the advice of the County Law Department, unanimously passed a resolution declaring that the challenged arbitration award "would require legislative en-

actment to be effective and shall be considered advisory only. Therefore, said Arbitration Award being the same is hereby rejected."

Following hearing and arguments, Judge Stranahan issued an opinion and order on March 19, 1981 voiding certain non-fiscal provisions of the arbitration award as infringing upon the exclusive authority of the judiciary, affirming other non-fiscal provisions, and ordering a hearing on the issue of whether the bonus and salary increase would require legislative enactment to be effective, reserving the right to make further order upon determination of that issue. Both the County and ACAPE appealed the court's decision ordering an evidentiary hearing on the issue of "legislative enactment," and the Commonwealth Court affirmed. *County of Allegheny v. Allegheny County Court Association of Professional Employees,* 67 Pa.Cmwlth. 277, 446 A.2d 1370 (1982), *allocatur denied* October 18, 1982.

An evidentiary hearing was conducted before Judge Stranahan on September 17, 1984, at which the County and ACAPE were represented and presented evidence in the form of testimony and exhibits. This evidence discloses the following.

Preparation and adoption of the County's annual budget proceeds in accordance with the applicable provisions of the Second Class County Code, Act of July 28, 1953, P.L. 723, art. XIX, §§ 1980–1982, 16 P.S. §§ 4980–82. The budget office reviews budget information and requests from the various county departments and agencies, and makes recommendations to the Commissioners. The Commissioners accept, reject or modify the budget office's recommendations, and promulgate and adopt an official annual budget. 16 P.S. § 4980(a). In 1980, that budget did not include a salary increase for court employees represented by ACAPE. At the same time the budget is adopted, the Commissioners "fix such rate of taxation upon the valuation of the property taxable for county purposes as will raise sufficient sum to meet the said expenditures." 16 P.S. § 4980(b).

Throughout a given budget year, funds may be transferred from one county account to another by approval of a majority of the Commissioners. *See* 16 P.S. §§ 4973 and 4981(c)–(e). As the senior budget analyst for the County testified, and as documents verify, transferrence of monies from one account to another was a "normal procedure ... not a unique happening." Notes of Testimony, September 17, 1984 at 17, 16. The budget office would review requests for transfer of already appropriated funds from one account to another and make recommendations to the Commissioners, who would reach a consensus on the request. In 1980, there were hundreds of such transfers of funds made routinely by approval of the Commissioners upon request by the budget office. The funds for such transfers would come from "another place in the budget wherever we [the budget office] feel there may be sufficient excess appropriation; somebody has decided not to purchase a vehicle or has decided not to award the contract they were planning or awarding." *Id.* at 17.

In fact, during the 1980 fiscal year, funds in excess of one million dollars were actually transferred from one account to the court employee salary account through such informal transfer procedures, although this transfer and salary increase was a unilateral one which was not related to the arbitration award (which totalled about $454,000 in raises and one-time bonus).

The evidence further disclosed that the Commissioners' declaration, by resolution of October 9, 1980, that the arbitration award "would require legislative enactment to be effective" was a *pro forma* proclamation made solely on the advice of the Law Department without discussion of the merits or fiscal impact of the award.

Based on the foregoing, the court of common pleas, by opinion and order of December 19, 1984, found that the County had not met its burden of proving that implementation of the salary increase and bonus provisions of the arbitration award required "legislative enactment" as contemplated by the legislature in section 805 of Act 195.

Accordingly, that court held that the salary increase and bonus provisions of the arbitration award were binding and ordered the County to implement said provisions.

Following denial of post-trial motions, the County appealed to Commonwealth Court and, on August 8, 1986, a unanimous panel of that court (per MacPhail, J.) affirmed that portion of the lower court's opinion affirming the salary increase and bonus provisions of the arbitration award and ordering the County to implement those provisions.[1] This Court granted the County's petition for allowance of appeal on February 11, 1987, and we now affirm in part and reverse in part.

As we noted at the outset, section 805 provides that where representatives of units of court employees have reached an impasse in collective bargaining negotiations with their public employer, that impasse "shall be submitted to a panel of arbitrators whose decision shall be final and binding ... with the proviso that the decisions of the arbitrators which would require *legislative enactment* to be effective shall be considered advisory only." In *Franklin County Prison Board v. Pennsylvania Labor Relations Board, (PLBR)*, 491 Pa. 50, 417 A.2d 1138 (1980), we had occasion to construe "legislative enactment" as used in section 805 in light of the Pennsylvania Constitution's limitation on the legislature's power to make arbitration awards final and binding. That constitutional limitation is found in Article III, section 31, which provides, in relevant portion:

The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal im-

---

[1]. The Commonwealth Court reversed the lower court's order to the extent that it had ordered implementation of the arbitration award provisions concerning sick leave, jury duty and funeral leave, holding that such areas are within the exclusive province of the judiciary and that these provisions infringed upon the independence of the judiciary, citing *AFSCME, District Council 84 v. Pennsylvania Labor Relations Board (PLRB)*, 83 Pa.Cmwlth. 591, 477 A.2d 930 (1984) and *County of Lehigh v. PLRB*, 507 Pa. 270, 489 A.2d 1325 (1985). This portion of the Commonwealth Court's decision has not been appealed from and is not before us for review.

provement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever.[2]

The Prison Board in *Franklin County* had argued that because the County Salary Board was required by law to "fix salaries and compensation" for county employees, a "legislative enactment" was required to make the arbitration award increasing prison guards' salaries effective; therefore, the Prison Board argued, the arbitration award was advisory only. In rejecting that position, we held:

Where an arbitration award would infringe on the legislative power of the General Assembly or of the lawmaking body of a political subdivision of the Commonwealth, *as where the appropriation of funds and/or the levying of taxes is required by the award,* then that award is invalid under Art. III, section 31 as an attempted delegation of legislative power to a non-legislative body.... In light of the expressed purposes of Act 195 and the reliance on arbitration as an alternative to striking (especially for those employes prohibited from striking), we cannot accept the Prison Board's interpretation of section 805 that the mere existence of authority in the Salary Board to

**2.** The 1968 Constitutional amendment to Art. III, section 31 specifically permits the delegation to panels or commissions of the authority to bind lawmaking bodies to arbitration resolutions of grievances, disputes or collective bargaining impasses between firemen and policemen and their public employers. This amendment provides:

Notwithstanding the foregoing limitation or any other provision of the Constitution, the General Assembly may enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties and shall constitute a mandate to the head of the political subdivision which is the employer, or to the appropriate officer of the Commonwealth if the Commonwealth is the employer, with respect to matters which can be remedied by administrative action, and to the lawmaking body of such political subdivision or of the Commonwealth, with respect to matters which require legislative action, to take the action necessary to carry out such findings.

Act 111 of 1974, § 217.7 (Supp.1978–79), granting collective bargaining rights to policemen and firemen, implemented the 1968 constitutional amendment.

"fix salaries and compensation" renders all arbitration awards touching upon such items advisory only. Such an interpretation would nullify, for all practical purposes, the "final and binding" provisions of section 805 for all awards regarding salaries or other compensation.

491 Pa. at 59–61, 417 A.2d at 1142–43. (emphasis added).

Accordingly, we held that the requirement that the Salary Board must fix salaries and compensation does not constitute a "legislative enactment" so as to render the arbitration award advisory only. We went on to state:

> However, the Prison Board can only implement the award to the extent permitted by Art. III, sec. 31 of the Constitution. Thus, the Prison Board can only submit to the Salary Board the financial items of the arbitration award, and the Salary Board must fix the salary and compensation in accordance with the award. *If, at that point, legislative enactment is required—that is, if taxes must be levied or funds appropriated*—then our holding herein cannot be read to override the Constitutional prohibition against improper delegation of legislative powers. *Where it is demonstrated by the public employer that the lawmaking body has met, considered and rejected an arbitration award concerning financial items, then Art. III, sec. 31 and the proviso of section 805 become operative, and the award is thereby rendered advisory only.* In such an event, the only recourse at present available to the public employes is either a constitutional amendment or resort to the political processes.

491 Pa. at 62, 417 A.2d at 1144. (emphasis added)

As the lower courts in this case correctly observed, *Franklin County* placed the burden of demonstrating that an arbitration award is advisory only upon the public employer which must establish (1) that "legislative enactment," i.e. the levying of taxes or appropriation of funds, is necessary to implement the award and (2) if so, that the public employer has, in fact, met, considered and rejected the award. The Commonwealth Court, following the lead

and adopting the analysis of Judge Stranahan in the instant case, has recently held in a trio of consolidated cases that *Franklin County* placed this two-part burden on the public employer to demonstrate that "legislative enactment," i.e. levying of taxes or appropriation of funds, is required to implement an arbitration award, and that the employer has actually met, considered and rejected the arbitration award. *AFSCME, District Council 83, AFL–CIO v. PLRB*, 95 Pa.Cmwlth. 465, 505 A.2d 1041 (1986); *County of Lehigh v. AFSCME, District Council 88, Local 543*, 95 Pa.Cmwlth. 486, 505 A.2d 1104 (1986); *Butler County Correctional Officers v. Butler County Commissioners*, 95 Pa.Cmwlth. 471, 505 A.2d 1110 (1986).

■ We agree with the reasoning and holding of Judge Stranahan, for the court of common pleas, as affirmed by Commonwealth Court, that the County of Allegheny has failed to meet its burden under *Franklin County* of demonstrating that the arbitration award is advisory only. Unable to improve upon the eloquent and persuasive analysis of Judge Stranahan, we set forth and approve of the following portions thereof:

[In] November and December of each year, budget requests are made from the various departments or agencies in the county, which are compiled into the official county annual budget. The rate of taxation is then set in order to provide funding for items in the budget. Thus, it is this process whereby "taxes are levied" and "funds are appropriated."

During the administration of the county government, changes will be made from one line item of the budget to another. According to the witnesses and the evidence presented by [the County], the Commissioners can independently by majority vote increase or decrease the amount of money alloted to any given line item. The money transferred into a line item generally comes from some other line item with excess or surplus funds.

[The County's] evidence also documented that no money was appropriated during the initial budget adoption proceedings for fiscal year 1980 for increased wages for court-related employees. However, during the year 1980, funds were subsequently transferred into that line item for that purpose (although not pursuant to this arbitration award). We cannot help but believe that such an informal transfer of funds from one line item to another within a massive county budget does not constitute a "legislative enactment."

We assume that any arbitration award which grants increased wages to public employees will require such a line item transfer within the political subdivision's budget. Thus, to find that such a transfer constitutes a legislative enactment produces the exact absurd result which the courts of this Commonwealth have struggled to avoid—that of emasculating the value of arbitration as a tool to solve conflicts in labor relations, and overriding the legislature's clear intent that arbitration awards be final and binding on the parties. Rather, we believe that the intended result of the legislature in enacting [Act 195] will be honored and effectuated by considering the budget adoption process as legislative enactment, and the subsequent transfer of funds from one line item to another to constitute the ordinary administration of municipal affairs.

\*       \*       \*       \*       \*       \*

Of course, where the implementation of an arbitration award would require the local governmental body to levy further taxes in order to have funds to appropriate to such line item, then the legislature cannot constitutionally be forced to take such action. This would clearly be legislative enactment, and would conflict with *Franklin County's* expressed concern over taxation without representation. However, where there is money available in the government's general fund or from other items with surplus funds, we hold that in order to effectuate the policy and intent of [Act 195], such money must adminis-

tratively be transferred to fund a legally binding arbitration award.

The [County] did not submit evidence at the hearing held on September 17, 1984, to show that the Allegheny County budget for the year 1980 did not have sufficient revenues to fund the instant arbitration award. They did indicate that the court's salary account was overdrawn so that more money had to be transferred into that account. However, since it has not been shown that there were no other items in the budget with excess or surplus funds available for administrative transfer to the salary account, we find that the arbitration award ... must be implemented.

\* \* \* \* \* \*

We further note that the second step of *Franklin County's* two-pronged test was not met in this case. Evidence presented at the hearing indicated that no analysis of the cost of implementing the arbitration award was prepared until just prior to the hearing in September 1984. Although the County Commissioners hurriedly adopted a resolution on October 9, 1980, the day before the first hearing in this matter, such action does not comply with the Supreme Court's mandate to meet, *consider* and reject such an award. It is beyond discussion that a financial proposal or recommended action can be considered without the benefit of a cost analysis.

Moreover, the wording of the resolution indicates that the award was rejected merely because it was thought to require legislative enactment to be effective. The minutes of the meeting indicate that the resolution was based solely on the Law Department's recommendation that the award was advisory only ( [Appellee's] Exhibit B), without a shred of discussion of the merits or fiscal impact of the award. Such a summary rejection in no way constitutes a "consideration" of the award, and clearly illustrates the very evil about which our Supreme Court has been so concerned—that all arbitration awards covering public employees can be summarily and automatically rejected.

We agree that it is absurd to suggest that an entire statutory scheme designed to foster fair and peaceful labor relations by providing for binding arbitration in place of disruptive and costly strikes must be frustrated and rendered totally ineffective by allowing one party to the award to summarily reject it, while the same award is binding on the other party. We cannot believe that the legislature intended such a result, and we will not endorse it.

Opinion of Court of Common Pleas of Allegheny County, Judge Stranahan specially presiding, December 19, 1984, slip op. at 17–22.[3]

It is clear that county commissioners perform complex, multiple roles of mixed legislative, executive and administrative functions. It also seems clear that, as the County argues and ACAPE acknowledges, some degree of "legislative action" is involved in transferring funds from one county account (or "line item") to another. However, to equate such "legislative action" with "required legislative enactment" would, as Judge Stranahan suggests, completely emasculate Act 195 and render all arbitration awards dealing with fiscal matters advisory. This we will not do.

The County argues, in the alternative, that it is entitled to a set off or credit against the salary increases ordered by the arbitration award. The County states: "The uncontested evidence showed that the persons represented by appel-

---

**3.** The term "excess or surplus funds" in a line item account is somewhat misleading. Since the budget for a given year is the product of an appropriation process which occurs prior to that year, all funds available during a current year are necessarily earmarked for an expressed purpose to a particular line item or account. However, as the record demonstrates, funds earmarked for a particular purpose or to a particular line item are not necessarily expended as originally anticipated. Thus the term "excess or surplus funds" should be understood in this context to mean funds earmarked for an express purpose or a particular account which are not actually used or needed for the purpose or account originally anticipated. Where the funds are available in the subdivision's coffers over and above that required to perform essential services and those funds earmarked to satisfy existing contractual obligations, the award should be considered mandatory.

lee [ACAPE] received greater increases in 1980 and other years than the salary increases ordered by the arbitration award, and yet no offset was granted." Brief for Appellant at 32. The net result of the refusal of Commonwealth Court to recognize such a set off, according to the County, is to grant the ACAPE member employees an "enormous windfall" at the expense of the taxpayers of Allegheny County. We agree.

In July, 1980, after the County had filed its Petition for Review of An Arbitration Award in the Court of Common Pleas, the County unilaterally granted ACAPE member employees a $1,000.00 general salary increase, along with a $1,000.00 increase that ACAPE had refused in 1979 and an additional $125.00 in lieu of dental benefits which ACAPE had rejected, for a total of $2,125.00 per member. This increase was intended by the County to bring ACAPE employees' salaries in line with the raises that had been given other County employees in 1979 and 1980, while nevertheless continuing to challenge in court the validity of the salary increases awarded by the arbitrators. At least part of this unilateral salary increase has remained part of ACAPE employees' base salary since that time.

The arbitration award gave each member of ACAPE a $1,200.00 one-time cash bonus and various salary increases to different subgroups of ACAPE members. For example, a Probation Officer I was to receive an increase of $1,383.00 for the period from May 1—December 30, 1980, in addition to the $1,200.00 cash bonus, and certain other employees such as Reference Librarians and Investigators received salary increases of $850.00 for the period from May 1—December 30, 1980 in addition to the bonus which was "rolled into" their salaries effective May 1, 1980.

At the hearing before Judge Stranahan on September 17, 1984, uncontradicted evidence of the County's unilateral payment of $2,125.00 to ACAPE members was placed before the court. Following the court's affirmance of the

arbitration award by opinion and order of December 19, 1984, the County filed a motion for post-trial relief setting forth numerous exceptions and objections to the trial court's ruling, including the following:

22. The County of Allegheny requests relief from the Opinion and Order because the persons under consideration in this matter (represented by [ACAPE]) received increases in 1980 and other years which were greater than the salary increase (less bonuses) of the arbitration award under consideration. (See Exhibit 2, TR. 4–5).

ACAPE filed objections to post-trial relief asserting, inter alia, that the County had waived its various challenges to the court's ruling because "the grounds alleged were not raised in pre-trial proceedings or during "trial" by timely objections. Pa.R.C.P. 227.1, as amended and effective on January 1, 1984."

The post-trial motions court rejected ACAPE's argument that the County had failed to "preserve its issues by objection at trial (or pre-trial proceedings or other appropriate method—Pa.R.C.P. 227.1(b)(1). . . ." Slip op., April 19, 1985, at 5. However, that court did not specifically address the merits of the County's contention that it was entitled to a set off. Nevertheless, as ACAPE states in its brief to this Court, the order and opinion denying the County's motion for post-trial relief "implicitly rejected such a requested offset. . . ." Brief for appellee at 29.

On appeal to Commonwealth Court, the County renewed its claim that it was entitled to a set off due to its unilateral salary increase of July 1980. That court rejected this claim, stating:

The County specifically refused to implement the arbitrator's award but nevertheless granted ACAPE members an increase. The increase was not authorized pursuant to the award, nor is there any indication in the record that the increase was granted on the condition that it be offset against implementation of the award. In our view, there-

fore, implementation of the award does not require an offset.

99 Pa.Cmwlth. 530, 535, 513 A.2d 1101 at 1104.

■ We agree with the County that it was erroneous for the lower courts to reject the County's request for a set off under these circumstances.[4] Acting in good faith, and upon legal advice of counsel, the County refused to implement the award of the arbitrators, thus necessitating the initiation of these protracted court proceedings by ACAPE. However, realizing that ACAPE members were entitled to salary increases commensurate with the raises given other County employees pending the litigation (which is now more than seven years old), the County acted fairly and awarded such salary increases unilaterally in July, 1980. ACAPE members accepted this salary increase and have continued to accept it since the increase has, at least partially, remained as part of these employees' salary base.

We believe that the County's unilateral salary increase of 1980 could only have been made in contemplation of a set off in the event that ACAPE was ultimately successful in its litigation. Any other understanding would result in a form of unjust enrichment and would unfairly burden the taxpayer who, after all, must foot the bill for any salary increase.

Because the lower court implicitly rejected the set off theory, it obviously made no calculations as to the amount

4. In its brief before this Court, ACAPE does not renew its contention that the County had failed to preserve the set off issue by failing to comply with Pa.R.C.P. Rule 227.1, nor does it argue that the post-trial motion court's ruling on Rule 227.1 was erroneous. ACAPE does, however, make a more limited partial waiver argument, stating that under the County's post-trial "Exception No. 22, the County excluded the bonuses from its offset point." Brief for appellee at 29. This limited waiver argument is apparently based on the language in paragraph 22 that ACAPE members "received increases in 1980 and other years *which were greater than the salary increase (less bonuses)* of the arbitration award...." (Emphasis added). We do not view this language as attempting to "exclude the bonuses from [the County's] offset point," but rather, merely as language attempting to place the unilateral salary raise in perspective, i.e., greater than the arbitration awarded salary increases alone, but less than those salary increases plus bonuses.

of the set off due the County as to the various members of ACAPE who received varying salary increases from the arbitrators. Accordingly, we believe it is appropriate to remand this matter to the Court of Common Pleas of Allegheny County to determine the proper amount of set offs due.

The County also belatedly raises the argument that the lower courts' decisions in this case are inconsistent with the Commonwealth Court's decision in *County of Lehigh v. AFSCME, District Council 83, supra.* That case upheld an arbitration award increasing salaries of prison guards for the 1982 year as there were sufficient funds available in the 1982 budget to implement the arbitration award. However, the Commonwealth Court in *County of Lehigh v. AFSCME* held that the awarded increases for 1983 and 1984 were advisory only since the 1982 arbitration award preceded adoption of a budget for the latter two years. The County now, for the first time in this protracted litigation, contends that the 1980 arbitration award is invalid to the extent it increased salaries of ACAPE members for 1981 because, at the time of the award, no budget had yet been adopted by the Commissioners for 1981. We find that the County has waived this contention, having failed to raise it until this case reached this Court, and we express no opinion as to the propriety of the Commonwealth Court's ruling in *County of Lehigh v. AFSCME.*

For the foregoing reasons, we affirm the order of the Commonwealth Court in part and reverse in part, and we remand to the Court of Common Pleas of Allegheny County for further proceedings consistent with this opinion.

HUTCHINSON, Former Justice, and STOUT, Justice, did not participate in the consideration or decision of this case.

McDERMOTT, Justice, notes a dissent.