Board of Education of the School District of Philadelphia, Appellant *v.* American Federation of State, County and Municipal Employees, Local 1660, District Council 33, AFL-CIO, Appellee.

Argued March 5, 1982, before Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

*Vincent J. Salandria,* Assistant General Counsel, with him *Eugene F. Brazil,* General Counsel, for appellant.

*Alaine S. Williams,* with her *Richard Kirschner, Kirschner, Walters & Willig,* for appellee.

OPINION BY JUDGE ROGERS, April 29, 1982:

The Board of Education of the School District of Philadelphia appeals from an order of the Court of Common Pleas of Philadelphia County affirming an arbitrator's decision which sustained as a violation of the applicable collective bargaining agreement the grievance of AFSCME Local 1660 complaining of the termination by the district of the employment of bargaining unit members.

The facts are undisputed.[1] AFSCME Local 1660 is the exclusive representative for the purpose of collective bargaining of a unit of school district employes

---

[1] The facts as stipulated by the parties were evidently contained in a joint exhibit admitted into evidence by the arbitrator. This exhibit was not included in the record certified to this Court. However, neither party now takes issue with any of the facts as found by the arbitrator which findings, we are told, are a direct reflection of the stipulation.

whose duties primarily involved the collection of real estate and other taxes the proceeds of which are used to fund the school district's operations. The terms and conditions of employment of the approximately one hundred twenty members of Local 1660 are controlled by a collective bargaining agreement executed by the union and the school district and effective by its terms during the period from July 1, 1978 to June 30, 1981.

During the term of the collective bargaining agreement, the school district entered into an arrangement with the City of Philadelphia, formalized in a writing dated April 13, 1980, by which the school district agreed to terminate the employment of the bargaining unit members and the city agreed to rehire these employees within the city's Department of Revenue and to then perform for a fee the school district's tax collection duties. The authority of the Board of Education to enter into such an arrangement was assertedly to be found in Section 12-309(a) of the Educational Supplement to the Philadelphia Home Rule Charter (Educational Supplement) which provides:

(a) The Board of Education shall have the authority to enter into agreements relating to, but not limited to, joint tax collection, joint purchasing of supplies, equipment and contractual services, use of recreational and park equipment and facilities, control and prevention of juvenile delinquency, city planning, capital budgeting, capital programming, comprehensive development planning and health services with any department, agency, office, board or commission of the City, or with any agency of the Commonwealth or of the United States, or with any non-profit private agency, when, in the opinion of the Board, such agreement will further the efficient and effective administration of public education. In any such agreements,

the Board shall, insofar as possible, safeguard all rights of employment, status, and tenure of employes who may be transferred into or out of School District service by virtue of the operation of such agreements.

351 Pa. Code §12.12-309(a).

On June 30, 1980 the school district discharged each bargaining unit member. Since that date ninety-one members of the former bargaining unit have attempted to gain reemployment with the city. Of these, forty-seven were not able to pass a required qualifying examination. Each of the forty-four former bargaining unit members reemployed by the city has suffered a significant diminution in his wages and benefits as a result of the school district's operational change including a decrease in annual salary of between three and eleven thousand dollars; a loss of seniority, pension rights and accrued vacation and sick leave; and a substantial decrease in such fringe benefits of employment with the school district as hospitalization and life insurance.

In July, 1980, the union demanded arbitration of its grievance with respect to what it described as

the action of the School District of Philadelphia in attempting to abrogate, in its entirety, the current existing collective bargaining agreement by transferring employees employed by the School District in the Department of Revenue to the City of Philadelphia . . . such contemplated action by the School District is a complete subversion of the Union's recognized bargaining authority and, further, deprives the employees within the bargaining unit of the wages, hours and other terms and conditions of employment, including job security, which the collective bargaining agreement is designed to accord [sic].

Following a hearing conducted on December 16, 1980, the submission by the counsel for the union and the school district of a joint stipulation of facts, and the receipt of legal memoranda, arbitrator Alexander M. Freund issued, on March 20, 1981, a comprehensive opinion and, as we have indicated, sustained the union's grievance. Before the arbitrator the union argued that the school district's action constituted subcontracting on such a scale and resulting in such harm to members of the bargaining unit as to be in violation of promises both explicitly and implicitly made at the execution of the 1978-1981 collective bargaining agreement.

The school district responded with arguments it has renewed on this appeal: (1) that subcontracting for financial reasons and in the absence of anti-union motivation is lawful; and (2) that the employees at issue were, during their tenure with the school district "patronage employees"—a system of employment and a category of employees thought to be inefficient and undesirable by the current city administration—whose ordered reinstatement would require, contrary to Section 2g(i) of the collective bargaining agreement prohibiting "any [arbitrator's] decision contrary to . . . applicable law," the violation of Section 12-308 of the Educational Supplement, 351 Pa. Code §12.12-308 which empowers the Board to "adopt regulations based on merit principles and scientific methods governing all incidents of employment, including appointment, promotion, demotion, removal and discipline for all employes of the District . . ."; and (3) that the transfer of tax collection activities to the control of the department of revenue would accomplish substantial savings to the benefit of the financially moribund Philadelphia School District, a goal the arbitrator should not permit the strictures of the collective bargaining agreement to frustrate; and (4) that Section

12-309(a) of the Educational Supplement, above quoted, explicitly authorizes the sort of intergovernmental arrangements here challenged and that a decision in the union's favor would, therefore, impermissibly "limit . . . or interfere . . . with the powers, duties and the responsibilities of the Board under its by-laws, applicable law or rules and regulations having the force and effect of law," within the meaning of Section 2g(ii) of the collective bargaining agreement; and (5) that an order requiring the grievants' reinstatement would necessitate "deficit spending" by the Board in violation of Section 12-303(a) of the Educational Supplement, 351 Pa. Code §12.12-303(a).

On the basis of these facts and the presentation of these issues arbitrator Freund, affirmed by the court below, concluded "that the School District violated the Collective Bargaining Agreement in terminating the employment of all employees covered by the Agreement and transferring their work outside the bargaining unit, thereby unilaterally abrogating the Agreement and eliminating the bargaining unit." The arbitrator rejected the school district's many defensive contentions as grounded on an erroneous interpretation of those provisions of the collective bargaining agreement prohibiting an arbitration award which is contrary to law or which limits the Board's powers. In the arbitrator's view, the school district's restrictive contractual interpretation would

> nullify the Grievants' rights under the Public Relations Act 195 to the terms and conditions of employment provided under the parties' contract. . . . There is simply no basis for concluding that it was the mutual intent of the parties in Section 2g to frustrate the purposes of the grievance and arbitration procedures by denying employees the remedy required by a decision which is within an arbitrator's authority to render.

On the matter of relief, arbitrator Freund noted that the union had proposed a broad range of possibilities including reinstatement of the discharged employees, supplementation by the school district during the remaining term of the collective bargaining agreement of the wages and benefits of those employees who had secured positions with the city, and the fashioning of individual remedies on a case by case basis. In the light of the union's stated willingness to engage in negotiations with respect to an acceptable remedy for the school district's contractual breach, the arbitrator retained jurisdiction and referred the matter of relief to the parties for resolution.

Where contracting parties have committed to the arbitration process the resolution of disputes arising in the course of their contractual relationship, and where such a dispute has been so resolved, judicial review of the arbitrator's decision is highly circumscribed. An arbitrator's decision and the contractual interpretation on which it is premised will not be overturned if it draws its essence from the collective bargaining agreement; which test is met if "the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. . . ." *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 594, 375 A.2d 1267, 1275 (1977) *quoting Ludwig Honold Manufacturing Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969). *See also Leechburg Area School District v. Dale*, 492 Pa. 515, 424 A.2d 1309 (1981) ; *Port Authority of Allegheny County v. Division 85, Amalgamated Transit Union*, 492 Pa. 494, 424 A.2d 1299 (1981).[2] The ration-

---

[2] Other statements of the proper appellate role of this court with respect to arbitrators' decisions are even more restrictive. *See, e.g., Leechburg School District, supra,* (the ". . . arbitrator in ana-

ale for this limitation on judicial inquiry has been clearly articulated by the United States Supreme Court:

> It is the arbitrator's construction which was bargained for, and so far as the arbitrator's decision concerns the construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*United Steelworkers v. Enterprise Wheel and Car Corporation,* 363 U.S. 593, 599 (1960).

In apparent recognition of the limited basis for appeal the school district does not now take issue with the arbitrator's determination that the challenged managerial action was properly categorized as subcontracting. Neither does the school district argue that the arbitrator improperly derived from the terms of the collective bargaining agreement a prohibition against subcontracting on a scale and under the circumstances here at issue.

As we have indicated, the school district argued primarily before the arbitrator that in the absence of a motivation to discourage unionism, the subcontracting of work previously performed by members of a bargaining unit is not unlawful. As authority for this proposition cases in the federal courts involving private employers were cited. *See Fibreboard Paper Products Corporation v. National Labor Relations*

---

lyzing [a] dispute may have failed to properly perceive the question presented or erroneously resolved it, [but that] does not provide justification for judicial interference. Our inquiry ends once it is determined that the issue properly defined is within the terms of the agreement.") (concurring opinion of Mr. Justice FLAHERTY); *Association of Pennsylvania State College and University Faculties v. Commonwealth,* Pa. , 436 A.2d 987 (1981) ("Absent a showing of fraud in the decision-making process, the arbitrator's award should not be disturbed.) (concurring opinion of Mr. Justice NIX).

*Board,* 379 U.S. 203 (1964) ; *National Labor Relations Board v. Drapery Manufacturing Co., Inc.,* 425 F.2d 1026 (8th Cir. 1970). Each of these cases involves the issue of whether it is an unfair labor practice for an employer to subcontract union work without first engaging in appropriate negotiations with the union. Put another way, these cases concern whether subcontracting is a mandatory subject of collective bargaining. In the light of these authorities both parties to this litigation have devoted considerable effort in an attempt to establish the extent of the school district's willingness to negotiate with the union before transferring its tax collection operations to the city. However, the issue of whether the school district has here engaged in an unfair labor practice is simply irrelevant. Indeed, that inquiry is, in the first instance, one for the Pennsylvania Labor Relations Board. *See Pennsylvania Labor Relations Board v. Mars Area School District,* 480 Pa. 295, 389 A.2d 1073 (1978). As the arbitrator correctly determined, the cases cited are inapposite in the present dispute where the lawfulness and propriety of the school district's exercise of managerial power must be measured not by the prohibitions and requirements of Section 1201 of the Public Employe Relations Act[3] but by the provisions of the collective bargaining agreement.

The school district's next argument is predicated on an interpretation, rejected by the arbitrator, of Section 2g(i) of the collective bargaining agreement which provides:

. . . The arbitrator shall be without power or authority to make any decision:

(i)  Contrary to, or inconsistent with, or which modifies or varies in any way, the terms of this

[3] Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.1201.

Agreement or of applicable law or rules or regulations having the force and effect of law;

This provision, it is asserted, precludes an arbitrator from reinstating any employee to his position of employment with the school district if the circumstances of that employee's original hiring were not in accord with Section 12-308(b) of the Educational Supplement which provides:

The Board shall adopt regulations based on merit principles and scientific methods governing all incidents of employment, including appointment, promotion, demotion, removal and discipline for all employes of the District [with certain exceptions not here pertinent]. . . .

The arbitrator concluded that Section 2g(i) was not intended to prevent the otherwise valid reinstatement of an employee on the ground that the school district had failed to promulgate or to enforce merit regulations at the time of hiring. We cannot disagree. Moreover, there is no evidence in this record as to any of the circumstances attending the hiring of any of the former bargaining unit members or the nature of the regulations that were assertedly then violated.

In a related challenge, the school district contends that Section 2g(ii) of the collective bargaining agreement ought to have been interpreted so as to prevent the arbitrator from restricting, as it is asserted was done here, the power of the Board to accomplish intergovernmental agreements authorized by Section 12-309 (a) of the Educational Supplement. Section 2g(ii) provides that the arbitrator shall be without power to make a decision:

(ii) Which limits or interferes in any way with the powers, duties and the responsibilities of the Board under its Bylaws, applicable law or rules and regulations having the force and effect of law.

The arbitrator concluded that it was not the intention of the parties as expressed in Section 2g(ii) to preclude the granting of relief to employees discharged in violation of the contract solely because the relief granted would render more costly the exercise of one of the Board's powers under the Educational Supplement. Again, we cannot disagree with this interpretation and we note that, so far as this record reveals, the union is not insisting that the school district abandon its intention to transfer tax collection activities to the city but only that the rights of union members under the contract and during its stated term be protected; a protection the arbitrator found to be expressly contained in the final sentence of Section 12-309(a) requiring that ''[i]n any such agreements, the Board shall, insofar as possible, safeguard all rights of employment status, and tenure of employes who may be transferred into or out of the School District service by virtue of the operation of such agreements.''

Finally, the school district vigorously argues that the arbitrator's award must be set aside because its implementation would necessitate the violation of Section 12-303(a) of the Educational Supplement requiring the Board to adopt a balanced budget and because it would impair the Board's ability to provide a thorough and efficient program of public education as is its constitutional imperative. In this regard, great store is placed in the recent opinion of this Court in *Philadelphia Federation of Teachers v. Thomas,* 62 Pa. Commonwealth Ct. 286, 436 A.2d 1228 (1981) in which it was held, on the basis of the unique circumstance presented in that case, that the reciprocal obligations contained in the second year of a two year collective bargaining agreement were unenforceable as having been entered into while the parties were mutually mistaken as to the operative facts. Additionally, the school district relies on *Franklin County*

*Prison Board v. Pennsylvania Labor Relations Board,*
491 Pa. 50, 417 A.2d 1138 (1980) establishing the advisory nature of certain arbitration awards where a legislative enactment is required to fund the award. It is conceded that no request having been made of city council by the Board for the funding of tax collection activities, there was in the budget year here at issue no money specifically appropriated for those activities.

The school district's reliance on *Thomas* is misplaced. No mistake of facts has here been alleged and it was never argued before the arbitrator or the court below that the collective bargaining agreement between the school district and Local 1660 was somehow unenforceable or void but simply that it had not been violated and that the arbitrator was without the power to grant the requested relief. The school district's argument based on *Franklin County Prison Board* must be rejected as doubly premature. *Franklin County* makes clear that an arbitrator's award is not advisory unless "it is *demonstrated* by the public employer that the lawmaking body has met, considered and rejected [the award]." (Emphasis in the original.) 491 Pa. at 62, 417 A.2d at 1144. *See also Association of Pennsylvania State College and University Faculties v. Kline,* 496 Pa. 315, 436 A.2d 1386 (1981). No such demonstration has here been made by the public employer. Moreover, the nature of the relief granted by the arbitrator, a mandate for further negotiations by the parties, makes it impossible now to demonstrate the magnitude of the fiscal impact of the award. For the same reason, the school district's contention that the award will significantly impair the ability of the Board to provide a thorough and efficient education and will compel the early termination of the school year is, at this point, only speculative.

Order affirmed.

### ORDER

AND Now, this 29th day of April, 1982, the order of the Court of Common Pleas of Philadelphia County is affirmed.

This decision was reached prior to the resignation of Judge MENCER.