985 A.2d 697

JEFFERSON COUNTY COURT APPOINTED
EMPLOYEES ASSOCIATION, Appellant

v.

PENNSYLVANIA LABOR RELATIONS BOARD, Appellee.

Supreme Court of Pennsylvania.

Argued Sept. 8, 2008.

Decided Dec. 28, 2009.

484

Jon Pushinsky, Pittsburgh, for Jefferson County Court Appointed Employees Association.

Gretchen Kirstin Love, Robert E. Durrant, Campbell, Durrant & Beatty, P.C., Pittsburgh, for Jefferson County.

Warren R. Mowery, Jr., for Pennsylvania Labor Relations Board.

CASTILLE, C.J., EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## *OPINION*

Justice BAER.

In this appeal by allowance, we examine, in the context of a labor dispute, the inherent conflict between a board of county commissioners' constitutional right, in its legislative capacity, to implement a budget and the judiciary's constitutional right to administer justice by hiring, firing, and supervising its employees, within that budget. Under the circumstances here presented, we reach the following conclusions: (1) the labor organization representing the judiciary's employees has standing in this matter; (2) the county, in establishing its budget, did not encroach on the judiciary's constitutional right to hire, fire, and supervise its employees; (3) the judiciary did not contravene the county's legislative budget-making function by

settling the grievances; (4) the judiciary's constitutional right to hire, fire, and supervise its employees was violated when the salary board eliminated five trial court employee positions; and (5) the county committed an unfair labor practice by refusing to implement the grievance settlements. Thus, for the reasons that follow, we reverse the order of the Commonwealth Court.

As noted, the constitutional confrontation addressed *infra* arises from an underlying labor dispute initiated through a grievance proceeding (grievance), followed by a trial court action seeking a confirmation of the grievance settlements (confirmation action), which subsequently led to the filing of an unfair labor practice charge with the Pennsylvania Labor Relations Board (unfair labor practice).

Jefferson County (County) is a public employer under Act 195, the Public Employee Relations Act, 43 P.S. § 1101.101 *et seq.* (PERA). Appellant, the Jefferson County Court Appointed Employees Association (Association), is the certified labor organization representing a bargaining unit comprised of County trial court employees. In accord with the definitional section of the collective bargaining agreement (CBA), to which the County, through its Board of County Commissioners (Commissioners) and the Association agreed, the employees are "directly involved with and necessary to the functioning" of the Court of Common Pleas of Jefferson County (Judiciary or trial court).[1] The County Code, 16 P.S. § 1620 (County Code), provides the Commissioners with the ability to repre-

---

1. Article 2 of the CBA defined the bargaining unit, providing:

 Section 1: The bargaining unit consists of all full-time professional and non-professional employees who are *directly involved with and necessary to the functioning of the Courts and who are hired, fired and directed by the Courts,* including but not limited to court reporters, clerks in the magistrates' offices, clerks in domestic relations, assistant directors in domestic relations, clerks in probation and probation officers in probation; and excluding management level employees, supervisors, first level supervisors, confidential employees, law clerks and guards as defined in [the PERA].

 (emphasis added).

 The Preamble to the CBA provided that it was "the inherent right of the court to hire, discharge and supervise the employees comprising the bargaining unit." Article Two stated that Association's members are

sent the Judiciary in collective bargaining negotiations, so long as such representation does not impair the independence of the Judiciary, namely, its right to hire, fire, and supervise its employees.[2]

In January 2004, a new Board of County Commissioners took office and prepared a county budget.[3] Because county taxes were already levied to the limit permitted by law without trial court approval of a tax increase, the Commissioners petitioned the Judiciary for the authority to raise taxes to fund an anticipated $1.7 million budget deficit. The President Judge denied the Commissioners' petition. The Commissioners subsequently reduced budget appropriations for various county departments, including the Judiciary.

The Commissioners charged the County Salary Board (Salary Board), which consisted of the Commissioners, the County Treasurer, and the President Judge, with implementing the budget reductions. On March 8, 2004, the Salary Board eliminated eleven county positions, including five trial court

"hired, fired, and directed by the Courts." Article Six explained that, "the collective bargaining process must not infringe upon the Judge's authority to select, discharge and supervise Court personnel."

**2.** Section 1620, entitled "Salaries and compensation," states:

The salaries and compensation of county officers shall be as now or hereafter fixed by law. The salaries and compensation of all appointed officers and employes who are paid from the county treasury shall be fixed by the salary board created by this act for such purposes: Provided, however, that with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employes paid from the county treasury, the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas, the county and all elected or appointed county officers having any employment powers over the affected employes. *The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers.*

16 P.S. § 1620 (emphasis added).

**3.** The Board of County Commissioners acts as the County legislative branch of government by appropriating funds and levying taxes. *See e.g., Franklin County Prison Bd. v. PLRB,* 491 Pa. 50, 417 A.2d 1138, 1142–43 (1980); 16 P.S. §§ 202(6) and 203 (vesting the legislative power in the board of county commissioners).

employee positions that, as mentioned above, in accord with the definitional section of the CBA, were necessary to the functioning of the Judiciary.[4] *See supra* note 1. The President Judge, in his capacity as a member of the Salary Board, provided the sole vote against the elimination of the five trial court employee positions. The Salary Board deferred to the President Judge the selection of the particular positions to be eliminated.

Having made such selection, by letters dated March 15, 2004, the President Judge informed the five bargaining unit members of the elimination of their positions.[5] On the same day, the five bargaining unit members (Grievants) filed grievances with their immediate supervisors over the elimination of their positions, pursuant to the CBA's grievance procedure, alleging that the Salary Board's elimination of their positions violated the CBA. Article 21 of the CBA defines a grievance as "a dispute concerning the interpretation, application[,] or alleged violation of this agreement." Article 21 of the CBA delegates the resolution of grievances to the Judiciary.[6]

The immediate supervisors decided the grievances in favor of the Grievants and issued written determinations to the Grievants' department head, the President Judge. On March 22, 2004, the President Judge sustained the grievances, agreeing with the immediate supervisors' determinations that the

4. The Salary Board acted in an administrative capacity in fixing the salaries and compensation of County employees. *Beckert v. Warren*, 497 Pa. 137, 439 A.2d 638, 646–47 (1981) (citing to *Franklin County* for the proposition that a salary board's "actions are 'administrative' rather than 'legislative' ... because, *inter alia*, '[t]he authority to appropriate funds and levy taxes has been vested in the county commissioners, ... *not* in the [s]alary [b]oard.' "); *see also, County of Allegheny v. Allegheny Court Assoc. of Prof. Employees*, 517 Pa. 505, 539 A.2d 348, 352 (1988); 16 P.S. § 1623, *infra* note 11.

5. The five trial court employees were represented by the Association.

6. The CBA's grievance procedure, described in detail in Article 21, provides for a multi-step process, namely, submitting a written grievance to: (1) the employee's immediate supervisor; (2) the employee's department head; (3) the Commissioners' designee; and (4) arbitration. Article 21 also states that a party who is dissatisfied with the result of a prior step in the grievance procedure should appeal the decision to the next step. If no appeal is taken, resolution of the grievance at the prior step becomes binding.

elimination of the Grievants' positions violated the CBA and that the Grievants should thus be reinstated. The President Judge forwarded his decision along with the immediate supervisors' letters to the Commissioners. In separate correspondence to the Commissioners on March 23, 2004, the Association echoed the President Judge's conclusion and requested that the Commissioners reinstate the Grievants because the President Judge sustained their grievances, which resulted in enforceable grievance settlements pursuant to Article 21 of the CBA.[7] By letter dated March 30, 2004, the Commissioners refused to reinstate the Grievants, concluding that the President Judge's grievance settlements were not enforceable because the Judiciary lacked the authority to resolve the grievances.[8] On July 26, 2004, the Association filed an unfair labor

7. As noted previously, Article 21 of the CBA provides that when neither party takes an appeal to the next step in the grievance procedure, the grievance is resolved in accord with the decision reached at the prior step and becomes binding.

8. As fully detailed in the discussion *infra*, the County eventually asserted that the President Judge could not resolve the grievances without violating the separation of powers doctrine by impermissibly encroaching upon the County's constitutionally protected budgetary function. As discussed in detail in the body of this opinion, the separation of powers doctrine provides that the executive, legislative, and judicial branches of government are equal and none should exercise powers exclusively committed to another branch. *Beckert v. Warren*, 497 Pa. 137, 439 A.2d 638, 642 (1981).

Presently, the parties do not dispute the propriety of the President Judge's grievance settlements. Thus, notwithstanding that this case arises from an underlying labor dispute, the threshold inquiry at this juncture is whether the County had the right to refuse to implement the grievance settlements because they constituted an inappropriate attempt by the Judiciary to infringe upon the County's legislative budget-making function, or, conversely, whether the County's refusal to reinstate the Grievants infringed upon the Judiciary's constitutional right to hire, fire, and supervise its employees.

Although not relevant to the ultimate disposition of this appeal and solely for the purposes of background, following the County's refusal to reinstate the Grievants, the Association brought a confirmation action in the trial court to compel the County to implement the grievance settlements and reinstate the Grievants. The trial court found in favor of the Association, holding that the immediate supervisors' and President Judge's written determinations constituted binding grievance settlements. *Jefferson County Court Appointed Employees Ass'n v. Jefferson County Comm'rs*, 2004 WL 5047435 (Court of Common Pleas of Jeffer-

practice charge with the PLRB on behalf of the five terminated trial court employees against the County.[9] The Association alleged, *inter alia*, that the County violated Sections 1201(a)(1) and (5) of the PERA, 43 P.S. § 1101.1201(a)(1) and (5), by refusing to comply with the grievance settlements calling for the reinstatement of the five trial court employees under the CBA's grievance procedure.[10] The County argued in response that it was not bound by the grievance settlements because they contravened the County's exclusive right to set the county budget for all county departments, including the Judi-

son County, No. 304–2004 CD, August 23, 2004). The trial court also determined that the County violated Section 1620 of the County Code because the elimination of the Grievants' positions amounted to an unconstitutional impairment of the Judiciary's ability to administer justice. *Id.* The trial court therefore ordered the County to reinstate the Grievants, which the County did on August 30, 2004, without raising taxes. *Id.*

The County thereafter appealed to the Commonwealth Court, which reversed the trial court's order, holding that the Pennsylvania Labor Relations Board (PLRB) had exclusive jurisdiction to decide whether the immediate supervisors' and President Judge's decisions were enforceable grievance settlements. *Jefferson County Comm'rs v. Jefferson County Court Appointed Employees Ass'n*, 872 A.2d 281 (Pa.Cmwlth., No. 1850 C.D.2004, March 29, 2005). As discussed herein, the parties proceeded to the PLRB. The case *sub judice* stems from an appeal from the PLRB proceeding, detailed in the body of this opinion.

9. The PLRB administers and enforces the PERA. *See* 43 P.S. § 1101.502 ("The [PLRB] shall exercise those powers and perform those duties which are specifically provided for in this act. These powers and duties shall be in addition to and exercised completely independent of any powers and duties specifically granted to it by other statutory enactments.").

10. Section 1201 of the PERA, entitled "Unfair practices by public employers and employe organizations; acts prohibited," provides at subsections (a)(1) and (a)(5) the following:

(a) Public employers, their agents or representatives are prohibited from:
(1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.

\* \* \*

(5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.
43 P.S. § 1101.1201(a)(1) and (5).

ciary.[11]

After a hearing examiner (the examiner) for the PLRB held a hearing on the Association's unfair labor practice charge, he issued a proposed decision and order, which found that the County committed an unfair labor practice by failing to implement the grievance settlements. *Jefferson County Court Appointed Employees Ass'n v. Jefferson County*, Proposed Decision and Order, Case No. PERA–C–04–353–W. The examiner's proposed decision stated that the County, having negotiated a CBA through which it delegated to the Judiciary the authority to resolve grievances under a specified grievance procedure, was bound by the immediate supervisors' and President Judge's resolution of the grievances in favor of the five terminated trial court employees in accord with that procedure. *Id.* The examiner summarily dealt with the County's constitutional argument, holding that the County failed to prove that compliance with the grievance settlements would impact its budget. *Id.* In this regard, the examiner noted that the employees had returned to work without budgetary consequences. *Id.*

On June 29, 2005, the County filed exceptions to the examiner's proposed decision and order. The County again argued that it was not bound by the grievance settlements and that its refusal to implement them was not an unfair labor practice because doing so would violate the separation of powers

11. The County also claimed that, as a matter of statutory law, establishing the number and compensation of County employees, including those working for the Judiciary, was reserved for the County through the Salary Board under the County Code, 16 P.S. § 1623, entitled "Number and compensation of officers, deputies, assistants, clerks and employe[e]s," which provides, in relevant part:

The [salary] board, subject to limitations imposed by law, shall fix the compensation of all appointed county officers, and the number and compensation of all deputies, assistants, clerks and other persons whose compensation is paid out of the county treasury (except employe[e]s of county officers who are paid by fees and not by salary), and of all court criers, tip[]staves and other court employe[e]s, and of all officers, clerks, stenographers and employe[e]s appointed by the judges of any court and who are paid from the county treasury.
16 P.S. § 1623.

doctrine by usurping the County's constitutional legislative budgeting function of appropriating funds for the operation of each county department, including the trial court. The PLRB agreed with this argument and entered a final order, contrary to the examiner's proposed decision and order, dismissing the unfair labor practice charge, reasoning that implementing the grievance settlements would infringe on the County's constitutionally protected legislative budgeting function. *Jefferson County Court Appointed Employees Ass'n v. Jefferson County*, Final Order, Case No. PERA–C–04–353–W.

The PLRB, acknowledging the constitutional ramifications of the case, emphasized that, "the issues sought to be litigated through the grievance procedure invoke much broader constitutional questions that should be litigated in a judicial forum, not before the PLRB." *Id.* The PLRB accordingly found that the Association lacked standing to grieve the terminations because the grievances did not arise from the CBA, but rather involved the County's legislative budgeting function. *Id.* The PLRB also noted that if the Judiciary deemed the County's failure to provide sufficient funding to the judicial branch a genuine threat to the administration of justice, the Judiciary had a well-established remedy—an action in mandamus against the County. *Id.*

The Association filed a petition for review in Commonwealth Court, which heard the case *en banc*. In a published opinion, a five-to-two majority affirmed the PLRB's dismissal of the unfair labor practice charge. *Jefferson County Court Appointed Employees Ass'n v. PLRB*, 912 A.2d 894 (Pa.Cmwlth. 2006). The majority emphasized that Section 1620 of the County Code, *see supra* note 2, "sets forth a framework of collective bargaining that does not violate the separation of powers doctrine." *Id.* Section 1620 lays a foundation upon which to determine whether the County or the Judiciary has the authority to settle a grievance, which depends on whether there is an irreconcilable conflict between the County's budgetary concerns and the Judiciary's right to hire, fire, and supervise its employees. *Id.*

The majority characterized the elimination of the trial court employees' positions as an "economic layoff," since the County eliminated the employees' positions because of the County's budget deficit. *Id.* Thus, according to the majority, the grievance settlements did not implicate the Judiciary's power to hire, fire, and supervise its employees, but, instead, were a legitimate extension of the County's legislative power over appropriations. *Id.* The majority therefore determined that the County's failure to institute the grievance settlements did not constitute an unfair labor practice because it was not within the Judiciary's authority to enter into the grievance settlements, as doing so contravened the County's legislative budgetary function. *Id.* The majority also agreed with the PLRB's determination that the Association lacked standing to claim that the terminations adversely affected the administration of justice. *Id.* The majority, like the PLRB before it, pointed out that if the County failed to provide sufficient funding to the Judiciary, the Judiciary could bring a mandamus action against the County to prove that the lack of funding created a genuine threat to the administration of justice. *Id.*

Judge Friedman, joined by Judge McGinley, dissented. According to the dissent, there can be no infringement on the constitutional legislative budget-making function in cases involving expenditures that are necessary to the functioning of the trial court. *Id.* The dissent noted that the only employees terminated were those that the CBA, in accord with its definitional section, deemed necessary to the functioning of the trial court, and, therefore the County needed to devise a budget to cover those employees. *Id.* Otherwise, the dissent explained, the County violated the separation of powers doctrine by infringing on the Judiciary's inherent constitutional function, the administration of justice. *Id.* The dissent therefore would have concluded that the President Judge did not contravene the County's budget-making function by deciding the grievances in favor of the Grievants. *Id.*

Moreover, the dissent explained, when it eliminated the five trial court employee positions, the Salary Board was not

acting as a legislative body performing a legislative function, even though the Salary Board eliminated the trial court employees' positions to implement the Commissioners' budget. *Id.* The dissent asserted that the budget did not require the Salary Board to eliminate those particular positions. *Id.* Accordingly, its decision to do so was administrative, and as such, was separate and distinct from the County's legislative budget-making power.[12] *Id.* Therefore, had the County reinstated the five trial court employees pursuant to the grievance settlements, the Judiciary's budget would not have changed; the Salary Board, however, simply would have been required to take further administrative action to keep the Judiciary's budget within the level set by the County. *Id.* The dissent, accordingly, would have reversed the PLRB's final order. *Id.*

We granted Appellant Association's Petition for Allowance of Appeal. The Association challenges the Commonwealth Court's decision upholding the PLRB's dismissal of its unfair labor practice charge arising from the County's refusal to implement the grievance settlements by reinstating the five terminated trial court employees. The Association raises two issues: whether the Association had standing to grieve the elimination of the five trial court employee positions and enforce the grievance settlements, which, it alleges, arose out of a dispute concerning the interpretation of the CBA; and whether the County committed an unfair labor practice by failing to implement the grievance settlements directing the reinstatement of the five trial court employees. In an understandable effort to prevail in the underlying dispute, the Association frames its issues in labor relations terms. This notwithstanding, the dispute necessarily involves a constitutional confrontation, namely whether the actions of the County or the Judiciary violated the separation of powers doctrine.[13]

12. The Association, the PLRB, and the County all acknowledge that the Salary Board's actions, in eliminating the five trial court employee positions, were administrative, not legislative, pursuant to this Court's case law. *See supra* note 4.

13. While we are fully cognizant that when a case raises both constitutional and non-constitutional issues, this Court will not reach the constitutional issue if we may decide the case on non-constitutional

Accordingly, we will address first the important constitutional implications of this labor dispute, because disposition of the Association's standing and unfair labor practice issues so requires.[14]

The Association takes the position that this case presents an attempt by the County to interfere impermissibly with the Judiciary's constitutional duty to hire, fire, and supervise its employees by County termination, through the Salary Board, of necessary trial court employees, under the guise of legislative action to address a budget deficit. Moreover, the Association alleges that while the Salary Board eliminated the positions to implement the County's budget, the budget did not require the elimination of five trial court employee positions. Citing to a Commissioner's testimony before the PLRB, in which he acknowledged that there were alternative ways to eliminate employees, the Association states that the terminations were made "arbitrarily" while other avenues of cost reduction were available to the County. The Association emphasizes that the County, in fact, reinstated the trial court employees on August 30, 2004, without raising taxes.[15] *See supra* note 8. The Association also maintains that the President Judge's grievance settlements reinstating the employees did not violate the separation of powers because they did not constitute an infringement on the legislative budget-making function, as the Salary Board's actions were administrative

grounds, *P.J.S. v. Pa. State Ethics Comm'n*, 555 Pa. 149, 723 A.2d 174, 176 (1999), we do not have that option here. Contrary to the Dissenting Opinion, we respectfully note that both the parties and the lower tribunals have extensively analyzed the constitutional separation of powers doctrine issues underlying this labor dispute. As indicated throughout, our resolution of the labor dispute in this case thus necessitates a constitutional separation of powers doctrine inquiry.

14. This Court's standard of review of a final order of the PLRB is limited to determining whether the adjudication violates an appellant's constitutional rights, is not in accordance with the law, is in violation of the Commonwealth agency's practice and procedure, and whether any finding of fact the agency made and is necessary to support the adjudication is not supported by substantial evidence. *Borough of Lewistown v. PLRB*, 558 Pa. 141, 735 A.2d 1240, 1243 n. 7 (1999).

15. The Association also points out that the five terminated trial court employees have remained employed since the original trial court order reinstating them. *See supra* note 8.

rather than legislative. *See supra* notes 4 and 12. Therefore, by refusing to comply with the President Judge's grievance settlements, the Association claims that the County infringed upon the Judiciary's inherent constitutional power to hire, fire, and supervise its employees.

Conversely, Appellee PLRB explains and the County, as Intervenor, echoes, that under the auspices of resolving grievances, the President Judge sought improperly to compel the County to expend additional funds for the Judiciary, by reinstating the five terminated trial court employees, and to pay for them with money that was legislatively allocated elsewhere, thereby intruding into the County's constitutional budgetary function. The PLRB disagrees with the Association's allegation that the reinstatement of the terminated employees did not necessitate additional tax dollars because the funding for the positions could have come from other sources within the County. Indeed, the PLRB claims, it is always the case that trial court positions may be funded by reducing allocations to other departments but that allocation decision is a legislative function. The PLRB contends that the disagreement regarding adequate funding of the Judiciary implicates the separation of powers doctrine and therefore cannot be resolved through collective bargaining and the filing of an unfair labor practice charge. The PLRB emphasizes that the County did not, and cannot, delegate its constitutional legislative function of establishing a budget through the CBA with the Association.

To facilitate our review of the important constitutional implications of this labor dispute, we emphasize that to maintain the independence of the three branches of government, our system embodies a separation of powers. *Loving v. United States,* 517 U.S. 748, 756, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996); *Beckert,* 439 A.2d at 642. This separation depends on two distinct concepts, as embraced by the framers of both the federal and Pennsylvania constitutions: (1) no branch may usurp a function belonging to another and each must operate within its own separate sphere of power; and (2) a system of checks and balances exists, which prevents one branch from

acting unchecked. *See Loving,* 517 U.S. at 757, 116 S.Ct. 1737; *Beckert,* 439 A.2d at 642. The allocation of these powers among the three branches of government serves to avert the danger inherent in the concentration of power in any single branch or body because "[t]he accumulation of all powers, legislative, executive, and judicial, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny." *Beckert,* 439 A.2d at 642, citing The Federalist No. 47 (James Madison).

 Article V of the Pennsylvania Constitution vests the judiciary with the power to administer justice. *Commonwealth ex rel. Jiuliante v. County of Erie,* 540 Pa. 376, 657 A.2d 1245, 1247 (1995); *Beckert,* 439 A.2d at 642. The judicial branch's right "to hire, fire, and supervise its employees is derived from that constitutional source." *Jiuliante,* 657 A.2d at 1247; *see also County of Lehigh v. PLRB,* 507 Pa. 270, 489 A.2d 1325, 1327 (1985); *Ellenbogen v. County of Allegheny,* 479 Pa. 429, 388 A.2d 730, 734 (1978). Further, the judiciary's authority over court personnel "is essential to the maintenance of an independent judiciary." *County of Lehigh,* 489 A.2d at 1327; *see also Ellenbogen,* 388 A.2d at 734. Another branch of government thus may not encroach upon this judicial power, although it is not unlimited. *Jiuliante,* 657 A.2d at 1247.[16]

 Concomitantly, control of state finances, specifically, the power to appropriate funds and levy taxes, lies with the legislative branch. *McCulloch v. Maryland,* 17 U.S. 316, 431, 4 Wheat. 316, 4 L.Ed. 579 (1819); *Beckert,* 439 A.2d at 642–43; *Leahey v. Farrell,* 362 Pa. 52, 66 A.2d 577, 579 (1949). The legislative power, however, is also not unlimited because it is constrained by other constitutional considerations. *Marbury v. Madison,* 5 U.S. 137, 176–77, 1 Cranch 137, 2 L.Ed. 60 (1803); *Leahey,* 66 A.2d at 579. A legislative action that impairs the independence of the judiciary in its administration

---

**16.** The judicial function of administering justice "does not include the power to levy taxes in order to defray the necessary expenses in connection therewith." *Beckert,* 439 A.2d at 643, *citing Leahey,* 66 A.2d at 579.

of justice violates the separation of powers; the corollary is that a judicial action that infringes on the legislative function also violates the separation of powers. *Beckert*, 439 A.2d at 643. In the case of such a violation, there is no question that the judiciary has the power to exercise its check on the legislature and invalidate such a constitutionally repugnant act by compelling expenditures that are necessary to prevent the impairment of the administration of justice through an action in mandamus. *Id.* at 643–44; *Jiuliante*, 657 A.2d at 1247. Without such power, the Pennsylvania General Assembly could destroy the state judiciary, the existence of which the Pennsylvania Constitution, Article V, mandates.[17] *Beckert*, 439 A.2d at 643; *Jiuliante*, 657 A.2d at 1247.

With the separation of powers doctrine in mind, we will now turn to resolution of this complex case. Typically, we would first consider whether the Association has standing, but instead will begin by analyzing the legislative and judicial actions underlying this appeal because our ultimate holding regarding the standing and unfair labor practice issues so requires.[18]

17. The Supreme Court of the United States has held that "... the power to tax involves the power to destroy...." *McCulloch*, 17 U.S. at 431. This Court also noted that:

> A Legislature has the power of life and death over all the Courts and over the entire Judicial system. Unless the Legislature can be compelled by the Courts to provide the money which is reasonably necessary for the proper functioning and administration of the Courts, our entire Judicial system could be extirpated, and the Legislature could make a mockery of our form of Government with its three co-equal branches—the Executive, the Legislative and the Judicial.

*Beckert*, 439 A.2d at 643, citing *Commonwealth ex rel. Carroll v. Tate*, 442 Pa. 45, 274 A.2d 193, 199 (1971), *cert. denied*, 402 U.S. 974, 91 S.Ct. 1665, 29 L.Ed.2d 138 (1971).

18. We acknowledge that this case is not a mandamus action initiated by the Judiciary but rather an unfair labor practice charge the Association brought pursuant to the CBA that nonetheless has significant constitutional implications. If the Judiciary had brought the case as a mandamus action, it would have been required to prove that there exists "a *genuine threat* to the administration of justice, that is, a nexus between the legislative act and the injury to the judiciary, not merely a theoretical encroachment by the legislature," *Beckert*, 439 A.2d at 643, citing

■ Accordingly, we first focus on whether the County violated the Judiciary's constitutional right to hire, fire, and supervise its employees. The County, through its Commissioners, in its legislative capacity, had every constitutional right to decrease the budget appropriation to the Judiciary. As we have reiterated throughout this opinion, if the Judiciary believed that it could prove that the decreased appropriations would pose a "genuine threat to the administration of justice," it had the well-established remedy of doing so in an action in mandamus against the County. *Beckert*, 439 A.2d at 643–44; *Jiuliante*, 657 A.2d at 1247.

However, that power encroached on the Judiciary's authority to hire, fire, and supervise its employees when the Salary Board directed the Judiciary to eliminate five trial court employee positions. As a co-equal and independent branch of government, the Judiciary has the right to decide how to square its operating needs within the budget allocated to it. Presumably, the Judiciary had options, other than eliminating five employee positions, which would have allowed it to operate within a reduced budget.[19]

■ Accordingly, the Judiciary's constitutional right to hire, fire, and supervise its employees was violated when Salary Board eliminated the five trial court employee positions. Rather than charging the Salary Board with implementing the budget reductions, the constitution and separation of powers doctrine mandate that the County present the Judiciary with the reduced budget and allow the Judiciary to determine how to operate within it.[20] Stated another way,

*Ellenbogen*, 388 A.2d at 735; *See also Snyder v. Jefferson County*, 533 Pa. 203, 620 A.2d 1133 (1993).

19. For example, the Judiciary could have decreased funding for technology as well as various other expenses and services. We do not suggest that the Judiciary would not have had to engage in its own economic layoffs, subject to its collective bargaining obligations, if doing so would have been necessary to operate within its budget. The import of this analysis is that decisions regarding the hiring, firing, and supervising of trial court employees are the Judiciary's, not the County's or the Salary Board's, to make.

20. We note that from a constitutional perspective, whether the County, in its legislative capacity, or the Salary Board, in an administrative

once the County appropriates funds to the Judiciary, it is the Judiciary's constitutional duty to allocate the funds to administer justice. This procedure preserves the County's constitutional budget-making prerogative, while also maintaining the Judiciary's independence, thereby allowing it to exercise its constitutional right to hire, fire, and supervise its employees. *Jiuliante*, 657 A.2d at 1247; *County of Lehigh*, 489 A.2d at 1327. The Judiciary would then have had the opportunity, as an alternative to eliminating the five employee positions, to determine other ways to reduce costs in order to operate within the budget.

We next turn to whether the Judiciary encroached upon the County's constitutional budget-making function when it settled the grievances, reinstating the five trial court employees. It is noteworthy that the Judiciary did not request more funding than the County had already allocated to it and, regardless of the outcome of the grievances, as explained above, the Judiciary remained obligated to determine how to operate within its budget.[21] The President Judge, in order to fulfill his contractual duties in his capacity as an employer under the CBA to hire, fire, and supervise the Judiciary's employees, processed and settled the grievances. *See supra* note 1. The Judiciary, through the President Judge, therefore possessed the collectively bargained for authority to settle the grievances, which did not equate to a demand for additional funds from the County, and did not contravene the County's legislative budget-making function by doing so.[22]

action, eliminates trial court employee positions is a distinction without a difference because decisions regarding hiring, firing, and supervising trial court employees are within the Judiciary's administration of justice function.

21. Although we recognize that the parties may have assumed that the President Judge's resolution of the grievances was a *de facto* request for additional funds, the fact is that there was no *de jure* request, and we decline to assume a fact not in the case.

22. Section 1620 of the County Code also recognizes the Judiciary's inherent right to hire, fire, and supervise its employees. *See supra* note 2.

As we find no constitutional infirmity with the Judiciary addressing these grievances pursuant to the CBA, we next examine the labor issues in this case. The PLRB and County assert that the Association lacks standing to challenge the elimination of the five trial court employee positions because the grievances were improper backdoor attempts to force the County to increase budget allocations to the Judiciary through the collective bargaining process, a function exclusive to the Judiciary via an action in mandamus. However, the Association was not seeking to compel the County to provide the Judiciary with more funding. Rather, the Association appropriately grieved, pursuant to the CBA, the elimination of the five trial court employees' positions as a contravention of the CBA. After prevailing during the grievance process, the Association properly sought to remedy the County's refusal to comply with the grievance settlements through the existing administrative process within the collective bargaining relationship, by filing an unfair labor practice charge with the PLRB. Consequently, the Association certainly maintains standing to represent its employees in the appellate litigation ensuing from the PLRB's Final Order.

In conformance therewith, the Association urges this Court to reverse the Commonwealth Court's decision that the County did not commit an unfair labor practice by not abiding by the grievance settlements. The Association asserts that the County committed an unfair labor practice by failing initially to implement the President Judge's valid grievance settlements, as Article 21 of the CBA required.[23] *See supra* note 6. The County again takes the position that it did not commit an unfair labor practice because the President Judge's sustaining the grievance was an improper attempt to intrude into County budgetary management, in violation of the separation of powers doctrine, as discussed in detail *supra.*

As previously discussed, we hold that the President Judge had the authority to settle the grievances regarding the terminated employees and the grievance settlements did not

**23.** The County eventually reinstated the employees, pursuant to a court order. *See supra* note 8.

violate the separation of powers in that they were not mandates to modify the budget the County had established for the Judiciary. Thus, the grievance settlements were binding under the CBA, given that the County did not appeal them, and the County's initial failure to reinstate the five terminated trial court employees was an unfair labor practice, in violation of Section 1201 of the PERA, *supra* note 10.

In conclusion, we hold that: (1) the Association has standing in this matter; (2) the County, in establishing its budget, did not encroach on the Judiciary's constitutional right to hire, fire, and supervise its employees; (3) the Judiciary did not contravene the County's legislative budget-making function by settling the Association's grievances; (4) the Judiciary's constitutional right to hire, fire, and supervise its employees was violated when the County, via its Salary Board, eliminated the five trial court employee positions; and (5) the County committed an unfair labor practice by failing to implement the grievance settlements. Therefore, we reverse the Commonwealth Court's order and remand the matter to the PLRB for a Final Order in accordance with this Opinion. Jurisdiction relinquished.

Justice SAYLOR did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, Justices TODD and McCAFFERY join the opinion.

Justice GREENSPAN concurs in the result.

Justice EAKIN files a dissenting opinion.

Justice EAKIN, dissenting.

I am compelled to dissent as I do not believe this matter presents us with an issue of the constitutional separation-of-powers. This case arose from the Association's attempt to enforce a final grievance settlement, and we granted allocatur on issues pertaining to collective bargaining. Specifically, we accepted the following issues:

1. Does a comprehensive collective bargaining agreement serve as a limitation on the authority of the County's Salary Board, such that it is an unfair labor practice for the County to refuse to implement final grievance settlements directing the reinstatement of five necessary court appointed employees who were terminated as the result of action taken by the Commissioners, sitting as the Salary Board?

2. Did the Association have standing to grieve and enforce final grievance settlements arising out of disputes concerning the interpretation, application and alleged violation of all collective bargaining agreement provisions?

*Jefferson County Court Appointed Employees Association v. Pennsylvania Labor Relations Board,* 595 Pa. 402, 938 A.2d 985, 986 (2007) (table).

Accordingly, all parties focused their arguments on the collective bargaining agreement and whether the Association has standing to enforce the final settlements. Their briefs appropriately contain only peripheral advocacy on whether the Salary Board's decision violates the constitutional power of the judiciary to hire, fire, and control its employees. I am troubled by rendering constitutional decisions on matters tangential to the question accepted for review; sweeping statements should not be made *in dicta* and without the benefit of proper advocacy.

Additionally, I do not find the County violated "[t]he judicial branch's right to hire, fire, and supervise its employees [which] is derived from [Article V of the Pennsylvania Constitution]." Majority Op., at 498, 985 A.2d at 707 (citing *Commonwealth ex rel. Jiuliante v. County of Erie*, 540 Pa. 376, 657 A.2d 1245, 1247 (1995)). Certainly the court may hire and fire, but only within budgetary constraints which are not generally within its control.[1] As the majority acknowledges, the judiciary may not levy taxes to fund judicial operations.

---

1. As the majority aptly recognizes, if staff reductions interfere with the administration of justice, the President Judge could bring an appropriate mandamus action.

*Id.,* at 498 n. 16, 985 A.2d at 707 n. 16 (quoting *Beckert v. Warren,* 497 Pa. 137, 439 A.2d 638, 643 (1981)). The budget given the judiciary is based on the stated needs of that branch—it is not a grand, unallocated total accepted by the funding body on faith, from which the court can allocate specific funds as it sees fit. Indeed, the Salary Board alone has authority to set the pay of all judicial employees. *See* 16 P.S. § 1623 (Salary Board sets compensation for court-appointed but county-paid employees).

The County faced a $1.7 million dollar shortfall, no small matter in a Sixth Class County. One may safely assume that the predominant component of the judiciary's budget in Jefferson County is the same as in every county and indeed this Court's own budget—personnel costs. The Salary Board decided the judiciary's share of the shortfall required the termination of five court employees, and the President Judge ultimately decided which five employees would be let go for want of funds to pay them. Further, speculation about "other options" the judiciary may have had is just that—pure speculation, which is not part of this record, and statements about what might have been cannot be based on such unfounded assumptions.

The issue before us concerns unfair labor practices, specifically the effect of the CBA on the Salary Board's authority. As the involvement of the judiciary on this issue is strictly peripheral, I would not address the likewise peripheral issues that consume the bulk of my colleagues' otherwise thoughtful expression. Accordingly, I respectfully dissent.