J-S38034-20

2020 PA Super 219

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SAMMY HILL | : | No. 377 MDA 2020 |

Appeal from the Order Entered February 25, 2020
In the Court of Common Pleas of Huntingdon County Criminal Division at
No(s):  CP-31-CR-0000713-2019

BEFORE:   KUNSELMAN, J., McLAUGHLIN, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                    **FILED SEPTEMBER 09, 2020**

The Commonwealth appeals from the February 25, 2020, Order of the Court of Common Pleas of Huntingdon County dismissing, with prejudice, charges arising from Appellee, Sammy Hill's, possession of marijuana and drug paraphernalia while in prison.[1]  After careful review, we reverse and remand the case to the trial court for further proceedings.

The trial court set forth its "*Facts & Analysis*" herein as follows:

> [Appellee] is serving a life sentence for First Degree Murder. He now faces one felony and two misdemeanor charges arising from his possession of a small amount of synthetic

---

* Former Justice specially assigned to the Superior Court.
[1] Appellee was charged with one count each under 18 Pa.C.S.A. § 5123(a.2), Possession of controlled substance, contraband by inmate prohibited; 35 P.S. § 780-113(a)(16), Intentional possession of a controlled substance; and 35 P.S. § 780-113 (a)(32), Use/possession of drug paraphernalia. The first charge listed above is a felony, while the others are misdemeanors.

marijuana in his cell at SCI Smithfield.[1] If convicted (which appears likely) he faces an additional twelve years in prison. Not surprisingly, he has rejected the District Attorney's plea offer, which would force this matter to a jury trial.

The Pennsylvania State Police have properly and appropriately investigated and initiated these charges. The District Attorney is now waiting to shoot his proverbial fish in a barrel, the [c]ourt -appointed defense attorney is preparing to go through the motions on a case he knows he is going to lose (and which distracts from matters truly needing his attention), and the [c]ourt's staff is dutifully processing the filings, assembling a jury pool, and preparing for trial.[2]

What nobody is apparently doing is asking the most basic of questions: "Why?" Is it really worth all this time and cost to taxpayers to tell a life inmate that once he dies, he will have to serve an additional twelve years?

This [c]ourt (and this community) is all too familiar with the risks and problems presented by illicit drugs in our prisons. Prosecuting and sentencing [Appellee], however, serves none of the goals of our criminal justice system. There is no additional deterrence, protection of the public, or retribution to be had here.

[Appellee's] conditions of confinement will not change, nor will he have any fewer privileges-the DOC does not maintain different levels of confinement based on the total number of years (or total number of sentences) to be served. Parole is unavailable to inmates serving life sentences, so there is no chance that [Appellee] will be released sooner if his offense is not prosecuted. In sum, winning this case cannot even be characterized as a pyrrhic victory, as there is simply no victory to be had.

The Commonwealth's budget problems are well known, and cases like this represent a misguided attempt by the Commonwealth to address internal prison discipline problems for which they currently lack a solution. Additional prosecution through the courts only exacerbates, rather than addresses, those problems. While we appreciate the danger that drugs create within an institutional setting, the Department of Corrections should focus its resources more on effective methods to reduce the influx of (and demand for) narcotics in its facilities than on futile prosecutions that serve no real purpose.

We therefore respectfully suggest that the Department of Corrections should endeavor to establish an internal disciplinary program that constructively addresses and modifies inmate

behavior, and that the General Assembly needs to provide a new statutory scheme that addresses the realities of modern prison life.[3] It has been said that insanity is doing the same thing over and over again, but expecting a different result. It is time for a new approach.

____

[1] He has since been transferred to the State Correctional Institution at Dallas, meaning transporting him back to Huntingdon County for trial increases the cost of prosecuting him even further (along with the attendant security risks).

[2] While Huntingdon County is reimbursed for the costs of prosecution by the Commonwealth, we are not reimbursed for the time and resources these cases take. Additionally, although Huntingdon County taxpayers are spared from the direct expense of prosecuting these cases, Pennsylvania taxpayers, as a whole, foot the bill for thousands of [d]ollars spent on each of these meaningless cases.

[3] The most logical resolution of such cases is to develop a series of summary offenses for conduct that occurs within the walls of State Correctional Institutions. Summary offenses do not entitle a defendant to representation by counsel or trial by jury, and the punishments would emphasize fines over additional incarceration. Upon conviction, these fines (and the associated court costs) could be deducted from an inmate's institutional account, and it would likely take a significant amount of time for an inmate to pay them off. Such punishment could conceivably have an impact on future similar conduct, and ultimately serve as a stronger deterrent.

Order and Opinion, filed 2/25/20, at 2-3.

The Commonwealth filed a timely notice of appeal on February 28,

2020.[2]    The Commonwealth filed its Concise Statement of Matters

_____

[2] Although the Commonwealth filed a Pa.R.A.P. 311(d) Certification and stated in its appellate brief that the appeal was from an interlocutory order, the instant appeal is, in fact from a final order dismissing the charges with
*(Footnote Continued Next Page)*

J-S38034-20

Complained of on Appeal on March 17, 2020, and the trial court filed its

Opinion in Support of Order Pursuant to Pa.R.A.P. 1925(a) on April 30, 2020.

In its brief, the Commonwealth presents the following issues for our review:

> 1.   Did the trial court abuse its discretion in dismissing charges *sua sponte*?
>
> 2.    Did the trial court violate the doctrine of separation of powers in dismissing charges *sua sponte*?

Commonwealth's Brief at 3.   As these issues are interrelated, we will

consider them together.

The Pennsylvania Supreme Court recently observed the following as to

the Separation of Powers Doctrine:

> The separation of powers doctrine is essential to our triparte [sic] governmental framework and is the cornerstone of judicial independence. It is inherent in the Pennsylvania Constitution and makes manifest that the three branches of government are co-equal and independent, and divides power accordingly. The governing structure of our Commonwealth, like the federal government, is divided into three equal branches, the legislative, *see* Pa. Const. art II, § 1 ("The legislative power of this Commonwealth shall be vested in a General Assembly ...."); the executive, *see* Pa. Const. art. IV, § 2 ("The supreme executive power shall be vested in the Governor ...."); and the

*(Footnote Continued)* _____

prejudice. A party may appeal from a final order. Pa.R.A.P. 341(a). A final order includes an order that "disposes of all claims and of all parties." Pa.R.A.P. 341(b)(1).  "Often, an order dismissing criminal charges is not a final order, as the Commonwealth may refile charges. ***Commonwealth v. Waller***, 453 Pa.Super. 36, 682 A.2d 1292, 1294 (1996) (*en banc*). If, however, 'the defect which requires the dismissal of [the] charges is uncurable, then the order dismissing the charges is final, and appellate review is proper.' ***Id.***"  ***Commonwealth v. Ligon***, 219 A.3d 1181, 1185 (Pa. Super. 2019).

- 4 -

judicial, *see* Pa. Const. art. V, § 1 ("The judicial power of the Commonwealth shall be vested in a unified judicial system ....").

The rationale underlying this separation of powers is that it prevents one branch of government from exercising, infringing upon, or usurping the powers of the other two branches. Thus, to "avert the danger inherent in the concentration of power in any single branch or body," no branch may exercise the functions delegated to another branch. ***Jefferson County Court Appointed Employees Association v. Pennsylvania Labor Relations Board***, 985 A.2d 697, 706-07 (Pa. 2009); ***see generally Markham v. Wolf***, 190 A.3d 1175, 1183 (Pa. 2018). The prohibition on one branch of government encroaching upon a sister branch's powers is, in turn, related to the system of checks and balances, which prevents one branch from acting unchecked. ***Jefferson County***, 985 A.2d at 706. For checks and balances to properly work, each branch must be kept from controlling or coercing the other. Insuring that each branch is co-equal and independent is the foundation of the separation of powers doctrine, and the avoidance of the concentration of governmental powers in one branch is essential to our freedom and liberty.

In our Commonwealth, the roots of the separation of powers doctrine run deep. The delineation of the three branches of government, each with distinct and independent powers, has been inherent in the structure of Pennsylvania's government since its genesis — the constitutional convention of 1776. Indeed for most of our Commonwealth's history, our Court has vigorously maintained separation of the powers of the branches, primarily relying on Article V, Section 1. ***See, e.g., Greenough v. Greenough***, 11 Pa. 489 (1849) (finding the separation of powers doctrine, and the inherent powers of the judicial branch, were distributed in the Constitution in such a way that the legislature could not exercise any judicial power). Article V, Section 1's perhaps rudimentary expression of the separation of powers doctrine became concrete with the 1968 amendments to the Pennsylvania Constitution. While Article V, Section 1 remained virtually unchanged in the 1968 Constitution, Article V, Section 10(a) was added, granting to the Supreme Court general supervisory and administrative authority over the judicial branch. Moreover, Article V, Section 10(c) was also added, granting to the Supreme Court the power to enact rules governing all aspects of the judiciary. These newly-minted provisions expressly made the separation of powers between the branches of government explicit.

***Michael Renner v. Court of Common Pleas of Lehigh County, County of Lehigh, John J. Sikora and Mark Surovy***, 2020 WL 4102756 at *5-6 (Pa. July 21, 2020) (footnotes omitted).

A trial court cannot be permitted, as here, to ignore the separation of powers doctrine and to usurp the power not only of the District Attorney but also of the Legislature, the Department of Corrections, defense lawyers and juries as well.

At the outset of its Order and Opinion entered on February 25, 2020, the trial court explained the rationale underlying its dismissal of the instant charges with prejudice *sua sponte* as follows:

> The [c]ourt bases its action upon no statute, Pennsylvania rule of court, or common law theory, other than the inherent power of the [c]ourt to manage its docket and avoid absurd results. This case is a perfect example of the kind of misuse of the courts and failure to act by the General Assembly that has become endemic over several decades. This [c]ourt's docket has become overburdened by drug possession cases that occur within the walls of the State Correctional Institutions at Smithfield and Huntingdon. Going forward, we will perform a *sua sponte* review of every such case that emanates from these institutions to determine if prosecution is merited.
> Apparently, the Department of Corrections is of the opinion that it has no adequate institutional remedy to deter such conduct within its system other than a referral to the Pennsylvania State Police, and as a result, its burden becomes a burden on the resources of the Pennsylvania State Police, the Huntingdon County District Attorney's Office, the Huntingdon County Public Defender's Office, and the court system. To say this has become a Sisyphean endeavor is putting it lightly. Prosecuting this [Appellee] on these facts is a colossal waste of the already strained resources of these over-stretched agencies, and absent direction from the legislature or the appellate courts,

we will continue to analyze these cases through a common-sense lens.

Order and Opinion, filed 2/25/20, at 1.

In its Rule 1925(a) Opinion, the trial court found the abuse of discretion standard to be "inapplicable" herein because the trial court conceded it acted under no statutory authority and added that "the line at which it becomes imperative for the judiciary to act has been crossed." Opinion in Support of Order Pursuant to Pa.R.A.P. 1925(a), filed 4/30/20, at 1-2.

The line that has been crossed here is the authority of the trial court. The trial court conceded it acted without statutory authority or according to any binding precedent, and speculated, without providing due process to the Commonwealth and to the Appellee, that Appellee likely would be convicted of each crime. It further decreed that it will usurp the discretion of the District Attorney in such cases "going forward," and, thus, interfere directly in the District Attorney's decision-making process.

The trial court ignored the well-settled principle that the Commonwealth retains discretion regarding the prosecution of criminal matters. *See Commonwealth v. Brown*, 708 A.2d 81, 84 (Pa. 1998) ("[a] District Attorney has a general and widely recognized power to conduct criminal litigation and prosecutions on behalf of the Commonwealth, and to decide whether and when to prosecute, and whether and when to continue or discontinue a case.").

The responsibility of the District Attorney includes the safety of prison staff and other inmates concerning illicit drug use in prison and it is not for a trial court to make its own determinations about these legitimate considerations *sua sponte*. **See Commonwealth v. Pachipko**, 677 A.2d 1247, 1249 (Pa.Super. 1996) ("It is clearly inappropriate for a trial court to raise an issue on behalf of a party, thereby acting as an advocate."); **see also Commonwealth v. Baumhammers**, 960 A.2d 59, 75 (Pa. 2008).

Further, the trial court injects itself into policy decisions of the Legislature and Department of Corrections. **See** Opinion filed 4/30/20 at 3-4. Appellee is serving a life sentence on a previous first-degree murder conviction. Notwithstanding the trial court's admonishment of the Legislature for "misuse of the courts" and for having an "endemic" failure to act over "decades," it is within the province of the Legislature to enact a statute that makes it a felony for an inmate to possess a controlled substance or contraband.

Significantly, the specific language of the statute states that no amount of contraband is inconsequential and omits any mention of the relevance of a previous sentence an inmate charged under the statute may be serving. **See** 18 Pa.C.S.A. § 5123(a.2) (stating "[a] prisoner or inmate commits a felony of the second degree if he unlawfully has in his possession or under his control any controlled substance in violation of section 13(a)(16) of The Controlled Substance, Drug, Device and Cosmetic Act [35

P.S. § 780-113(a)(16)]. For purposes of this subsection, no amount shall be deemed *de minimis*"). **See also** 18 Pa.C.S.A. § 2704.

Moreover, the trial court characterizes the discretion of the District Attorney to bring charges as "insanity" and "misguided" and delves into perceived budgetary problems of the District Attorney's offices. Opinion in Support of Order Pursuant to Pa.R.A.P. 1925(a), filed 4/30/20, at 3-4. However, the cost of a trial cannot justify the dismissal of charges. **See** 18 Pa.C.S.A. § 312.

Understanding that the three branches of government are independent but yet, at times, have overlapping responsibilities, and understanding that the trial court is frustrated with the process in the types of cases as herein, we cannot allow a trial court to bypass the constitutional processes in our system of government.

As such, respectfully, we hold that the trial court abused its discretion in dismissing the charges against Appellee and violated the separation of powers doctrine by exceeding the scope of its own authority under the Constitution of the Commonwealth.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/09/2020